J. E. SHAW et al., Appellants, v. BOARD OF SUPERVISORS et al., Appellees.

**APPEAL AND ERROR:  Review—Extent—Constitutional Questions.**
1  Constitutional questions raised but not insisted on in the trial court and not argued on appeal will not be considered by the appellate court.

**DRAINS:  Establishment—Appeal—Uncertain Record.**  An objection to
2  the noninclusion of certain lands within a drainage district may not be entertained on a record which is uncertain as to whether said lands were or were not included within the district.

**DRAINS:  Establishment—Absence of Benefits.**  A landowner may,
3  on the issue whether his lands should be included within a drainage district, show that said lands would receive *no* benefit from the proposed improvement.

**DRAINS:  Establishment—Utility and Expense.**  Record reviewed, and
4  held to support the feasibility and practicability of a proposed drainage improvement, and to establish the fact that the benefits of such improvement would be commensurate with the expense.

*Appeal from Greene District Court.*—E. G. ALBERT, Judge.

MARCH 13, 1923.

DRAINAGE District No. 126 was established by the board of supervisors of Greene County, January 7, 1919. Appeals to the district court were effected by proceedings in three cases, which cases were consolidated and tried in the district court. The district court rendered decree affirming the action of the board of supervisors, from which decree J. E. Shaw *et al.*, plaintiffs in one of the proceedings consolidated, appeal.— *Affirmed.*

*J. A. Henderson,* for appellants.

*A. D. Howard, E. B. Wilson,* and *E. G. Graham,* for appellees.

ARTHUR, J.—I. The proposed drainage district, not including an existing drainage district No. 101, contains approximately 700 acres of land in Jackson and Greenbrier Townships. Greenbrier Township lies directly south of Jackson Township. To the north and northwest of Jackson Township lies Drainage District No. 101, established some years ago, containing about 9,000 acres. The outlet of Drainage District No. 101 is into Greenbrier Creek, near the northwest corner of Section 33 of Jackson Township. Greenbrier Creek has its source near the north end of Drainage District No. 101, and courses in a southeasterly direction through District No. 101, and on through Jackson and Greenbrier Townships, passing out at the southeast corner of the district. The drainage ditch in District No. 101 follows, in a general way, the course of Greenbrier Creek. Greenbrier Creek is a small stream, averaging about 4 feet in depth and from 15 to 30 feet in width, with a winding course through the district. On either side of the stream, which courses generally through a narrow valley, the land rises, and seems to be generally quite flat.

By the plan adopted by the board and affirmed by the district court, in substance, it is proposed to dredge Greenbrier Creek from the outlet of the drainage ditch in the old District No. 101, southeast through the district to the point where it leaves the district in the southeast corner of the district in Section 14 in Greenbrier Township; and also to deepen and enlarge an open ditch already constructed, commencing at the outlet of the ditch in District No. 101, near the northwest corner of Section 33, a distance of some 1,300 feet, back northward, to serve as a better outlet for the ditch in District No. 101. It is proposed to excavate and deepen the bottom of Greenbrier Creek, beginning at the point of outlet of District No. 101, above mentioned, about 6 feet below the original outlet of District No. 101, and to distribute this added fall of 6 feet northward about 1,300 feet, where the tile drains in said No. 101 enter an open ditch; and also to take out about 2 feet of silt that has settled in the bottom of the outlet of No. 101. Within the boundaries of the

proposed district are three other small drainage districts, in which improvements have been constructed: No. 14, lying mostly in the southeast corner of Jackson Township; No. 45, located in the south middle portion of the proposed district; and No. 85, located in the southwest portion of the proposed district. It is claimed that the new drainage system will afford each of these three old districts better outlets than they have at the present time, which improvement is needed. In a general way, this is the plan proposed by the engineer and adopted by the board.

The establishment of the proposed district and construction of proposed improvements therein were objected to before the board and in the district court on grounds as follows:

(1)    That the cost, damages, and other expenses of the proposed improvements in the new district are excessive, and a greater burden than should be borne by the lands in the district; and that the expense is greater than the benefit to be derived by the construction of the proposed improvements.

(2)    That the proposed improvements will not reclaim any additional lands, excepting a small portion thereof which may be reclaimed by connecting with outlets already constructed in District No. 101.

(3)    That the proposed improvement is only a continuation of the outlet now existing for District No. 101; that such outlet should be condemned as provided by statute; and that the board had no jurisdiction to accomplish this purpose by means of the establishment of the proposed Drainage District No. 126.

(4)    That the entire District No. 101 should be included in the new district, so that the same may be assessed its fair part of the cost of constructing the new district.

(5)    That costs of the proposed improvement could not lawfully be laid against the property owners in the old district, because no notice was served on the individual property owners.

(6)    That no land will be reclaimed by the proposed system but what could be drained into Greenbrier Creek by improvements already constructed in the old districts.

(7)    That the board acted illegally, in that they allowed

damages to landowners for right of way without the filing of claims therefor.

(8)   That, owing to the high cost of labor prevailing, the expense of the proposed improvement will be excessive, and will require greater expenditure of funds than the landowners should be called upon to bear.

(9)   That the proceeding was erroneous, in that it should have been under the condemnation proceedings of Title X, Chapter 4, of the Code, 1897, and amendments thereto, and that the damages should have been assessed by a sheriff's jury.

(10)   That the drainage law under which the proceedings were instituted and are being had is in violation of Sections 9 and 18 of Article 1 of the Constitution of Iowa, and of Section 1 of the Fourteenth Amendment to the Constitution of the United States.

II.   The unconstitutionality of the drainage law was raised in the pleadings, but seems not to have been pressed in the district court, and is not argued here; and we will give it no consideration.

1. APPEAL AND ERROR: review: extent: constitutional questions.

III.   The complaint that damages were allowed for right of way to certain landowners where no claims were filed is answered by statute.   Section 1989-a4, Supplement to the Code, 1913.

IV.   Appellants urge as an objection to the establishment of the new District No. 126 that the entire District No. 101 was not included, and should be included, in the new district, so

2. DRAINS: establishment: appeal: uncertain record.

that the lands in same may be assessed their fair part of the cost of constructing improvements in the new district; and that the cost of the proposed improvements could not lawfully be laid against the property owners in the old District No. 101, because no notice was served on the individual property owners of said district. Such objection is not sufficient to defeat establishment of the proposed district.   The record is not clear whether all or only a portion of District No. 101 is included by order of the board, within proposed District No. 126.   The engineer recommended including the entire District No. 101, but, as we understand the record, included on his plat only a portion of said District No. 101, and the board established Drainage District No. 126 with

boundaries as recommended by the engineer on his plat. The plat or map of the engineer on which the board acted included lands in Sections 20, 21, 27, 28, 29, and 32, in Jackson Township. The outlet of District No. 101 is Greenbrier Creek, in the southeast corner of Section 29 of Jackson Township. Emptying into this outlet is an open ditch, extending northward about 1,300 feet, into the north end of which empties tile drainage of lands lying north in District No. 101. So it appears that the improvements recommended by the engineer, of cleaning out, widening, and deepening the outlet of District No. 101 and deepening the open ditch running into it and apportioning the grade up northward about 1,300 feet, to where the tile drain empties into it, are within the boundaries of the new district, and within territory where the individual landowners were served with notice of the proposed establishment of the new district, although a large number of the property owners of lands lying north of the quarter-section line of Sections 20 and 21 in the old District No. 101 were not served with notice of the establishment of the proposed district.

In a written decision, the lower court said:

"Assume that this District No. 101 is tied up in No. 126 by reason of the fact that the dredging of Greenbrier Creek, as recommended by the engineer, will make it possible to lower the outlet of No. 101 some six feet below where it was originally constructed; but the estimated cost thereof of something over $15,000 is not included by the engineer in his estimated cost of Drainage District No. 126."

No matter of assessment is before us. However, it may be observed, without passing on it, that, irrespective of the proceeding before us, the cleaning out, widening, enlarging, and deepening of the outlet of District No. 101 and improving the open ditch emptying into the outlet, as recommended by the engineer, could be done by the board under authority of Section 1989-a21, Code Supplement, 1913. The board would have the right, without notice to landowners, except those whose lands would be taken by right of way, if additional right of way were needed, to order the improvement recommended by the engineer. *Breiholz v. Board of Supervisors*, 186 Iowa 1147. In the light of the record, it would seem to be proper to burden

the lands of said District No. 101 with the expense of cleaning out, widening, and deepening the outlet and the improvement of the open ditch, as recommended by the engineer, and perhaps, also, to charge the lands of said district with part of the expense of dredging Greenbrier Creek below the outlet, as a betterment of its outlet. However, that is a matter of assessment, with which we are not here concerned, and upon which we do not pass.

V. Appellants urge that the new district and proposed plans of improvement should not be inaugurated because of the high cost of labor prevailing, and that the expense of the proposed improvement will be excessive for that reason. It is obvious that the cost of the improvement would necessarily be high at the present time. We will assume that the board will exercise good judgment, if the project goes forward, as to the time of letting the contract for labor and materials, and will wisely select a time when prices may be lower. However, this is a matter for the board to attend to, and not—anyway at this time—for the court.

VI. Appellants' position that damages should have been assessed by a sheriff's jury is wrong.

Other contentions of appellants will be comprehended in the consideration and discussion of the most important proposition involved, as to whether the cost of the proposed improvement is excessive, and a greater burden than should be borne by the lands in the district.

A landowner who appeals from the establishment of a proposed drainage system may raise the question that his land will receive no benefit whatever from the proposed improvement, and therefore should not be included in the drainage district, and may raise the question on appeal, 3. DRAINS: establishment: absence of benefits. and have it determined, whether the proposed district should be established or not, because of excessive cost and doubtful utility of the proposed improvement. We think that appellants have not established that their individual tracts of land would not be benefited by the proposed improvement and should not be included in the district.

VII.. We come now to the large and important proposition in the case: that is, whether or not the board and district court

were in error in establishing the proposed system of drainage,
by reason of excessive cost or want of utility.

4. DRAINS: estab-
lishment:
utility and
expense.

The decision of this case, as we view it, turns upon the solution of these propositions. The record presents a large volume of evidence on these issues. The plan of the engineer, S. J. Melson, adopted by the board, is attacked by appellants, with the testimony of two engineers introduced by them. The engineers called as witnesses by appellants projected their plan of improvement, which is different from that recommended by the engineer appointed by the board, and which appellants claim would effect adequate drainage of the lands within the proposed district at much less cost than the plan proposed by Engineer Melson. From the record we would not challenge the competency of any of the three engineers. It is possible that both plans for improvements would result satisfactorily, but we can be concerned only about the feasibility and practicability of the plan recommended by the engineer selected and adopted by the board: that is, whether the plan adopted, as nearly as may be determined, will operate in successful drainage of the lands in the district, and whether or not the cost to be incurred by the proposed system casts a greater burden than should be borne by the lands in the district,—that is, whether the expense is greater than the benefit to be derived by the construction of the proposed improvement. Always, if regular and legal proceedings have been pursued up to the point of final action, this vital question is to be settled, of whether the cost·of the proposed improvement is excessive; and the crucial test is made by comparing the expense with the benefit to be derived by the construction of the proposed improvement.

The evidence is very voluminous, and we cannot attempt to set it forth. We have carefully read the· record, and will mention some salient points. Hereinbefore, we have set forth a general view of the physical situation and plan of proposed improvements, which may be considered in the discussion of the questions now under consideration.

Melson, the engineer in charge, estimated that the proposed improvement would cost about $100,000. Melson estimated that swamp land would be assessed $100 per acre, wet land, $70 per

acre, low land, $15 per acre, high land, $2 per acre; and that $10,000 would be allowed for benefits to highways in the district. Melson's report shows that, in the proposed district, not including the old District No. 101, there are 222 acres of swamp, 907 acres of wet, 1,400 acres of low, and 4,465 acres of high land.

To show that the cost of the proposed plan is excessive, and a greater burden than the lands should bear, appellants introduced two witnesses, Engineers Hoffman and Moehler. On an estimate made by him, Moehler stated that the assessment against swamp land would be $160 per acre, against wet land, $51 per acre, against low land, $15 per acre, and against high land, $1.10; and that this, with an allowance of $16,300 for highways, would make a total cost to the district of $116,130. Hoffman made no estimate of the cost, and said, in substance, that he did not know and could not tell whether the cost was excessive or not. It is the opinion of Engineers Hoffman and Moehler that a tract of about 900 acres of land in the north part of Jackson Township, which it is conceded needs drainage, could be successfully drained without the necessity of dredging Greenbrier Creek, as is proposed, thereby avoiding considerable expense by utilizing a branch or spur to the main ditch, and by installing in such branch a larger tile than proposed by the engineer of the board; and that such larger tile could be used on the present grade, and avoid making a steeper grade by dredging Greenbrier Creek. We fear that the lesser grade, even with a larger tile laid, would not work well in so flat a grade as exists, which appears to be about five eighths of an inch to 100 feet. We scarcely think that it is wise to use so slight a grade when a much better grade can be secured by the plan proposed. The plan proposed by appellants' engineers is, substantially, to avoid the dredging of Greenbrier Creek and the cost incurred thereby.

Appellants claim that Engineer Melson overestimated the acreage of swamp land by including the present bed of Greenbrier Creek. That is probably true, but is a matter to be taken care of in the assessment of benefits. The cost of the improvement will be large, but we think that the benefits will be fully commensurate with the expense of the improvement.

After a careful examination of the whole record, we think appellants have not sustained the burden on them of making a clear and satisfactory showing, which is required in cases of this kind, such as would warrant us in disturbing the action of the board and the affirmance of the board's action by the district court.  The order of the court below is—*Affirmed.*

PRESTON, C. J., EVANS and FAVILLE, JJ., concur.