M. T. McGUIRE et al., appellants, v. ROSELLA VOIGHT, Treasurer of Kossuth County, et al., appellees; SWEA CITY STATE BANK et al., intervenors-appellees, and NELLIE EMERSON et al., intervenors on separate issues.

No. 47835. .

(Reported in 49 N.W.2d 472)

Linnan & Lynch, of Algona, for appellants.

Shumway, Kelly & Fristedt, of Algona, for appellees.

Senneff & Buck, of Britt, for intervenors-appellees.

L. A. Winkel and J. D. Lowe, both of Algona, and Alan Loth, of Fort Dodge, for intervenors on separate issues.

D. M. Kelleher, of Fort Dodge, for Board of Supervisors and Drainage District No. 9 of Kossuth County, Iowa.

MULRONEY, J.—Eleven landowners in extension of Drainage District No. 9, Kossuth County, Iowa, sued the county treasurer, the county auditor, the county board of supervisors and Kossuth County Drainage District No. 9, alleging the board of supervisors had entered into a contract with one Faber "for the removal of all

trees, brush and shrubs from both sides of the ditch bank of said extension of Drainage District No. 9"; that the board approved the completed work amounting to $16,201; that the auditor had issued warrants to the contractor in payment therefor; and the auditor had certified to the county treasurer the 1948 assessment against the plaintiffs and other landowners in extension of Drainage District No. 9 to collect the cost and expenses of the Faber contract. The petition attacks the assessment on two main grounds as follows: (1) The Faber contract was not the result of any legal petition filed by the landowners in the extension of Drainage District No. 9, and it was let without notice to plaintiffs and "not in compliance with the requirements of the statutes of the State of Iowa." (2) The extension of Drainage District No. 9 is a continuation of Drainage District No. 9 and the removal of the trees in the extension would be equally of benefit to Drainage District No. 9 and the assessment should be so spread as to include the landowners in Drainage District No. 9. The prayer of the petition was for a decree "nullifying the proceedings which instituted and carried into effect the work performed * * * under the Faber contract" or in the event that is not granted then a decree reassessing the expense to include the land in Drainage District No. 9.

The defendants' answer admits practically all of the factual allegations of the petition and expressly states that the work was necessary repair work, authorized by statute without notice.

In a pre-trial conference plaintiffs sought and secured a unique arrangement whereby the two main complaints alleged in their petition should be tried separately; that the court should first try the issue as to whether the assessment was a nullity—for failure to give notice of the letting of the contract, etc.—and, if the court decided it was not, then the other issue as to whether the assessment should embrace the land in District No. 9 would be tried.

Thereafter petitions of intervention were filed by certain banks, who were holders by assignment of the warrants, and a number of landowners in District No. 9.

Pursuant to the pre-trial arrangement the first issue was tried, resulting in a decree that the proceedings were not a nullity

based on the trial court's conclusion that the work on the Faber contract was mere repair. Plaintiffs, evidently under the impression their pre-trial arrangement gave them the right to appeal without consent, have appealed as if from a final judgment and decision. But all parties agree the reserved issue as to whether the assessment should include the land in District No. 9 has not been tried. Without approving such procedure we will affirm the trial court's decree.

I. The single question presented is whether the work of the Faber contract was repair or new construction. If it was a repair job then under the statutes, sections 455.138 and 455.140, Code, 1946, and under our holding in Haugen v. Humboldt-Kossuth Joint Drainage District, 231 Iowa 288, 311, 1 N.W.2d 242, 254, the statutory requisites of notice, public letting of contract, engineer's supervision, etc., required for new construction, have no application. There is no necessity for an extensive review of our prior decisions. This was done by Justice Bliss in the Haugen opinion. As stated, the question is one of fact: whether the removal of trees was repair or new construction. In the Haugen case we said the statute, section 455.140, Code, 1946, provides its own definition of repairs in the following language of the statute: "the work and materials as is required to clean out any specific open ditch * * * so as to restore it to its original efficiency or capacity and to preserve its sides at a practical slope * * *."

Extension District No. 9 is an open ditch, approximately four miles long, established in 1911 at a cost of $8192.75. As plaintiffs state in their statement of facts:

"It is clear from the evidence that from the time the ditch was constructed in 'Extension of Drainage District No. 9' in 1911 up to 1946 the board of supervisors failed to properly maintain the ditch and allowed a large number of trees to grow along the ditch banks and on the waste banks, which by 1946 had developed into considerable size."

About June 10, 1946, eight landowners in Extension of District No. 9 (six of them plaintiffs in this action) filed their signed petition with the board requesting "that the Board of Supervisors take steps to have the Main Open Ditch of Drain Extension No. 9

cleaned out * * * the ditch to the south being filled with silt, trees and other debris." The board appointed engineer Thorne to make a survey and report. The engineer's report, filed October 1, 1947, contains an item "clearing and grubbing 2085 trees $7335.25" and also the following statement of the engineer: "It has been my intention to lay the grade of this work on the same line of levels as that used by the engineer on the original construction and to have the same efficiency as the first constructed ditch." Thereafter the board contracted with Faber to "remove all the. trees, brush and shrubs from both sides of the ditch bank of the open ditch of Drainage District No. 9 Extension."

There can be no question under this record but that the work of the Faber contract was repair work and not new construction. It was work to clean out an open ditch to restore it to its original efficiency or capacity, within the very words of the statute (section 455.140, Code, 1946). Plaintiffs argue several propositions not at all germane to the pleaded issues and we find but little argument in plaintiffs' brief contending that the actual work done was not repair.

II. Plaintiffs argue that "taking off the tops of the trees did not 'restore the ditch to its original capacity or efficiency.' It did not remove any obstruction to the flow of water in the original ditch. No restoration of the original capacity or efficiency of the ditch has resulted, or will result. This work is outside the description of section 455.140 (Code of 1946) construed in the light of its purpose." The argument is answered by the testimony of two engineers to the effect that the removal of the trees was a first step in a clean-out job; that it is common practice to cut off the trees and leave the stumps, for if the stumps were blown out or pulled out at the time of cutting it would cause loosened dirt to fill the channel. These engineers said the trees had to be removed first to allow the dragline room to operate in removal of the silt and "it is common practice for the dragline operators to dig out most of the stumps with the bucket of the dragline." The record shows without question that after the trees were removed the board hired engineer Leffert to prepare an estimate and do whatever. was necessary to get ready for the letting of a cleanout of the ditch with a dragline and that Leffert had completed the field work before

this suit was started and the board decided to let the matter rest until the outcome of this suit.

III. Plaintiffs place much emphasis in their argument on the cost of the work which they state was $16,000 and results in a two-hundred per cent assessment because the original improvement cost a little over $8000. The cost of the new work is a circumstance which can be considered on the question of whether the new work is repair or new construction but it is not controlling. This is the rule announced in Haugen v. Drainage District, supra, and cases therein reviewed. And as we said in the last cited case:

"What is of real importance in determining this question must be found in the conditions as they existed, and the nature and purpose of the work done." (Page 305 of 231 Iowa, page 251 of 1 N.W.2d.)

Here the parties agree as to the condition of the ditch. It was filled with silt and trees. The record is clear that the purpose of the work was to remedy the existing condition and restore the ditch to its original efficiency.

There is not much force to the cost argument as it ignores the economic changes that occurred between 1911 and 1948 decreasing the purchasing power of the dollar. Then too the record shows that certain credits for logs sold and for money paid by Drainage District No. 9 for trees cut off of a portion of that ditch should be used to reduce the $16,000 figure. After allowing these credits the net cost of cutting the trees to the lands assessed would be $13,809.84. At this stage in the lawsuit it is impossible to tell the ratio between the cost of the Faber contract and the cost of original construction. Plaintiffs state it is two hundred per cent but it could be much less if it is later decided the assessment should be spread so as to include District No. 9.

Plaintiffs' complaint that the cost of cutting the trees exceeded the engineer's estimate of $7335.25 for "clearing and grubbing 2085 trees" is without merit. The question of whether the payment was excessive for the work done is not an issue. The record shows Thorne's estimate of the number of trees was less than fifty per cent correct. Plaintiffs' witness counted 4546 trees

from 3 to 42 inches in diameter. Defendants' engineers counted 5102 trees from 3 to 48 inches in diameter.

Upon the whole record we hold the contract was properly let as a repair project under section 455.140, Code, 1946, and that it was not necessary for the board to observe the formalities required by new construction statutes. The decree of the trial court is affirmed.—Affirmed.

OLIVER, C. J., and GARFIELD, WENNERSTRUM, SMITH, MANTZ, HAYS, and THOMPSON, JJ., concur.

BLISS, J., takes no part.