JOHN W. DULLARD et al., Appellants, v. JOHN PHELAN et al.,
Appellees.

**DRAINS:** Laterals—Statutory Right to Use.  A landowner who has
   been assessed for the cost of a drainage improvement may construct,
   wholly upon his own land, ditches for the purpose of carrying his
   surface waters into a lateral which has been located upon his land,
   even though said lateral may be overtaxed by said surface waters,
   to the damage of lower landowners.

Headnote 1:  19 C. J. p. 702.                      ..

*Appeal from Polk District Court.*—LESTER L. THOMPSON, Judge.

NOVEMBER 15, 1927.

An action to enjoin the defendants from maintaining a
ditch and diverting water on the land of plaintiffs.  From a
decree in favor of the defendants, denying plaintiffs relief,
plaintiffs appeal.—*Affirmed.*

*Gillespie & Canfield,* for appellants.

*Hammer & Tripp,* for appellees.

ALBERT, J.—The plaintiff Stephen Dullard owns an 80-
acre tract of land, lying north and south.  The plaintiff John
W. Dullard owns the 40-acre tract adjoining this 80 on the
north.  The defendant Phelan owns an 80-acre tract parallel-
ing the Stephen Dullard 80 on the east.  The Dullards have
owned their land for many years.  Phelan purchased his land
a little over five years before this action was commenced.  All
of these lands are situated in what is commonly known as the
"South Skunk River Bottom," and are low and flat.  The
natural drainage of the Phelan and also the John Dullard land
is toward and upon the Stephen Dullard 80.  Water flows from
adjacent lands above the Phelan land to and upon it, at or
near the east and west center line.  It then flows in a south-
westerly direction, and spreads out; changing its direction to
the northwest, and passes onto the Stephen Dullard land at a

point near the line between Phelan's two 40's. Where it enters the Phelan land on the east, it has washed out a ditch of some size, but as it progresses toward the west, it loses its character as a ditch, and spreads out over the surface of the ground. This is practically the situation as to Phelan's south 40, as nature left it. As to Phelan's north 40, near the northwest corner thereof is a slough, estimated by various witnesses to contain from 3 to 10 acres. This slough overflows to the west, or northwest, to the Stephen Dullard land. Shortly after. Phelan bought this 80, near his east line he constructed a dam across this ditch, and diverted the water to the northwest. Troubles arose between the neighbors about this dam, and it was taken out. Later, a county drainage district was established, including all of this land; and so far as we are concerned, the drainage or lateral of this system, which was an open ditch, crosses the south line of the Stephen Dullard land a few rods west of his southeast corner, running in a northerly direction; but before it reaches the north line of his land, it changes its direction to the east, and ends some distance east of the west line of the Phelan land. The general flow of the water in this ditch so constructed is to the south. Sometime shortly before this action was commenced, the defendant Phelan reconstructed the dam near the east line of his 80, and by means of the ditch deflected the water to the northwest, emptying into the pond or slough in the northwest corner of his north 40. Also, a ditch was constructed from this pond or slough in a northerly direction, emptying into the county ditch. This ditch constructed by Phelan on his land passed through a ridge of ground a little northwest of where he put in the dam, and is apparently some 7 or 8 feet deep at that point.

The claim of the two Dullards is that, by thus changing the course of water on the Phelan land, the county ditch will be overflowed, because it has not capacity to take care of all of this water at its upper end; hence a portion of their land will be damaged by the overflow thus caused.

The fact situation is somewhat hazy in certain respects. There can be no contention over the proposition that the water that came from the east onto the Phelan land, were it not for the dam, would run in a westerly direction, and spread out over the land of Stephen Dullard, and thus would not reach

the north end of this county ditch.   There is some evidence, however, tending to show that, even though it be admitted that the ditch constructed by Phelan on his own land passes through the ridge near the east side of his land, some 7 or 8 feet deep, yet, as the water flows to the west, and ceases to be confined in the channel, it spreads out over the land; and sometimes, as it flows onto the Stephen Dullard land, a part of it finds its way north into the slough or pond on the northwest corner of the Phelan land.   All of the testimony in the case bearing on the question tends to show that, up to the time this lawsuit was tried, the open ditch or county drain took care of all of the water that flowed into it from the Phelan land after the dam was put in, although the Dullards claim that the season was a dry one.   While the district court had the benefit of a typographical map of this territory, we have not been favored with the same, so are unable to visualize this situation as we would, had we such a map before us.   But we gather from the testimony that the ridge of land through which Phelan cut this ditch disappeared toward the west line of his land, making that part of his land and the Dullard land flat bottom land.  ·The evidence shows, however, that the county ditch above referred to, being an open ditch, is bound to take this water at some point, Stephen Dullard claiming that it should take it at a point somewhere in his south 40; but, as the ditch is the same width and depth for its full distance across the Dullard land, it would seem of little concern to them where this ditch took the water. The evidence is in quite sharp conflict as to whether or not there is any prospective damage to the Dullard land by reason of Phelan's act in constructing this ditch through his dam on the northwest corner of his 40.   Of course, if their tracts of land have not been damaged, or if there is not a definite assurance that they will be damaged in the future by this ditch that Phelan constructed, they have no case; and we are disposed to hold, after a review of all of the evidence in the case, that plaintiffs have not, under the record, sustained their action.

However this may be, there is another element in this case which seems to be controlling, and deserves consideration.˙ The evidence in the case does show, without dispute, the construction of this county drain onto the northwest 40 of Phelan's land. The engineer in charge of the construction of that county drain

testifies that the county drain was constructed onto the Phelan land for the purpose of giving him an outlet therefor. It is a well known fact that in the construction of these county drains it is the aim in all instances to construct either the main or laterals so that each tract of land in the district will have an outlet.

Section 1989-a22, Code Supplement, 1913, reads in part as follows:

"The owner of any land, lot or premises that have been assessed for the payment of the cost of the location and construction of any ditch, drain or watercourse, as hereinbefore provided, shall have the right to use the ditch, drain or watercourse as an outlet for lateral drains from said land, lot or premises."

The conception of the legislature in enacting the drainage statutes was to relieve the wet and swampy land in the state of Iowa. Not much can be added to the wording of the statute by way of interpretation. This outlet was constructed onto the Phelan land (80 acres) for the purpose of allowing him to use it for the benefit of his land; and so long as he operates wholly upon his own land in the construction of the laterals and drains, we feel that he is within the protection of the drainage law. He did this in this case, and he is not shown to have exceeded his rights and duties under the statute.

We are not quite satisfied, under this record, that the evidence shows that the north 40 of the Stephen Dullard and the John Dullard land will be overflowed by the construction of this ditch by Phelan, but even if it did so, the complaint must be against the drainage system and its inefficiency, and not against Phelan, when he is exercising the powers given to him by statute.

The ruling of the district court is right.—*Affirmed.*

EVANS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.