FRANK MORROW et al., appellees, v. HARRISON COUNTY et al.,
appellants.

No. 48303.

(Reported in 64 N. W.2d 52)

APRIL 7, 1954.

K. C. Acrea, of Missouri Valley, and Welch & Welch, of Logan, for appellants.

Michael Murray, of Logan, and DeVere Watson, of Council Bluffs, for appellees.

GARFIELD, J.—This is a drainage controversy. Plaintiffs are the town of Mondamin (1950 population 489) and four owners of farms east and northeast of the town along or near an open drainage ditch known as Spooner ditch and, to the north, Spooner extension ditch. Defendants are Harrison County, Soldier Valley drainage district, in which all lands here involved lie, the county board of supervisors and engineer. May 24, 1951, plaintiffs brought this action in equity to enjoin construction of an open ditch for about 2000 feet east from Spooner extension ditch along the north side of an east-and-west township road on the south side of section 8.

At the east end of the portion of the new roadside ditch in controversy the road crosses the old channel of the Soldier river. About 2000 feet east of the old river bed the road also crosses an open drainage ditch known as East Soldier ditch. The new ditch was also constructed along the north side of the road between its crossing of the old Soldier river and East Soldier ditch but plaintiffs·do not complain of the building of this east half (approximately) of the ditch. Spooner ditch and Spooner extension, old Soldier river and East Soldier ditch all extend generally north and south. The old river bed is about midway between the Spooner ditch and extension on the west and East Soldier ditch on the east, as they pass through the lands involved here.

Plaintiff Morrow owns the southwest quarter and the south half of the southeast quarter of section 20, and the west ten acres of the southwest quarter of the southwest quarter of section 21. Plaintiff Spooner and his brother own the east half of the southeast quarter of section 30, along the south side of U. S. Highway 75 just west of Spooner ditch. Plaintiff Johnson owns the northeast quarter of section 19 and the northwest quarter of section 20. Plaintiffs' petition alleges plaintiff Gammett owns the southeast quarter of section 18 and the west half of the southwest quarter of section 17. Gammett's east line is one-fourth mile west of Spooner extension ditch. The town of Mondamin outlets its storm sewer into Spooner ditch east of the town. The town has no sanitary sewer.

This plat of the territory (although not drawn to scale) was used in argument to us and will help to understand the controversy.

Plaintiffs claim the west half of the roadside ditch, the part between old Soldier river bed on the east and Spooner extension ditch on the west, would divert water from the old river to said ditch and, together with the east half of the road ditch, would carry overflow water from East Soldier ditch west to Spooner extension ditch, causing plaintiffs irreparable damage. Defendants deny plaintiffs would suffer substantial damage from the road ditch and contend most of the water it would send into Spooner extension ditch would naturally go into said ditch a mile or two south of the township road in any event.

The trial court agreed with plaintiffs and enjoined construction of the west 2000 feet of the road ditch. Defendants have appealed.

The lands here involved are nearly level bottom lands between the Missouri river on the west and the hills on the east. The Soldier river comes from the hilly country to the northeast and meanders south and southwest through the bottom lands toward its outlet in the Missouri river. Northwest of the lands here involved is an open ditch known as Soldier cutoff which carries water from the Soldier river to a new outlet in the Missouri river generally west of these lands. This ditch is not directly involved in this controversy.

Northeast of the upper end of East Soldier ditch in section 9 is an area of about four square miles known as Coffman Hollow which drains into this ditch. The various ditches herein referred to carry most of the water formerly carried by the Soldier river and much of the old river bed through the land involved here is dry except in times of heavy rainfall. From a point a quarter to a half mile south of the township road in question and on south the river bed has long been filled in by silt and farming operations until it is higher than the surrounding ground. Near this point and below it excess surface water spreads out over the land and the runoff finds its way into the Spooner ditches on the west and East Soldier ditch on the east.

There were unusually heavy rains in the spring of 1951 and water spread out from the old Soldier river channel both above and below the road along the south side of section 8. The road was then only a little higher than the surrounding ground. An opening through which the Soldier river formerly flowed south

across the road had been filled with trash and debris that had accumulated, according to plaintiff Morrow, for twenty-five years.

May 12, 1951, two landowners asked the board of supervisors to do something about the water that had accumulated near the old river channel along and north of the township road. One of them, Harry Guttau, owns 1280 acres in the Soldier Valley drainage district. Two hundred and fifty acres adjoin the east side of Spooner extension ditch—40 acres are north of the township road in question. Polen, the other complaining landowner, owns 120 acres through which East Soldier ditch runs, one-fourth mile south of the township road. Two of the three supervisors were present. They referred the complaint to the county engineer, Mr. Thomas, to investigate and report.

The engineer had his assistant take elevations of the ground along the east-and-west road between East Soldier ditch and Spooner extension ditch. He then prepared a profile showing these elevations and submitted it to the board of supervisors on the morning of May 15. All three supervisors were present. The engineer recommended to the board that the best way to drain the water along and north of the township road would be to raise the grade of the road about two feet and dig a ditch along its north side to an average depth of three and one-half feet. The profile shows a fall in the proposed ditch in each direction from the old river bed but the fall to the Spooner extension ditch is greater than that to the East Soldier ditch.

The board of supervisors accepted the engineer's recommendation and directed him to employ a dragline operator to do the work. The engineer secured a reliable dragline operator—the only one available—at $8 an hour. He commenced work the afternoon of May 15. The improvement was not completed when this action was brought on May 24 and the work stopped. Estimated cost of the work was $910. Of this amount the engineer and board proposed to charge $504 to the road fund and $406 to Soldier Valley drainage district.

The county engineer insists as a witness that the only added burden the roadside ditch would impose upon the Spooner extension ditch would come from some water that otherwise would evaporate or seep into the soil if it continued south along the old river bed. He says if the water continued in the old channel

it would soon spread out over the land south of the road in question and about half of it—that on the east side of the old filled-in channel—would find its way into East Soldier ditch and the other half—that on the west side of the old channel—would find its way into the Spooner ditches.

The engineer also testifies the land west of the old river bed north of the township road naturally drains south and west into Spooner extension ditch. There are at least two tubes north of the township road and three tubes in the mile and a quarter immediately south of the road through which water is carried from the east into Spooner extension ditch. The same witness explains that the only way to provide adequate drainage for the water along and north of the road, other than through the roadside ditch, would be to dig a new ditch for more than two miles south of the road along the old river channel. This would require much expense for acquisition of right of way and construction of a ditch nearly twice as deep as the roadside ditch.

There is little conflict as to much of the engineer's testimony and substantial corroboration for some of it. Plaintiff's engineer says he does not know which way the water would go if it passed through the township road in the old river channel. Plaintiff Morrow, whose land is a half mile north of Highway 75, says the old channel (apparently through his farm) is higher than the land east and west of it. This is consistent with the county engineer's evidence that the water west of the river bed naturally drains to the west into the Spooner ditches. Guttau testifies his 250 acres along the east side of Spooner extension ditch all drain into it and there is no other place it can go. The trial court found that the land west of the original channel has continuously been drained by the Spooner ditches.

■ I. We think plaintiffs have not shown themselves entitled to an injunction. Such relief should not be granted unless it appears substantial injury will probably result if relief is denied. The burden to prove the probability of substantial injury from the act sought to be enjoined rests upon plaintiffs. We have so held in many drainage cases. Schmitt v. Kirkpatrick, 245 Iowa 971, 977, 63 N.W.2d 228, 231, and citations. We feel plaintiffs have not proven this element of their case.

It does not appear probable water will be carried through

the roadside ditch from East Soldier ditch into Spooner extension ditch. This will not occur unless water escapes over the west bank of East Soldier ditch or the cover or gate of the tube into that ditch from the roadside ditch fails to function. It is without dispute that water has never escaped over the west bank of East Soldier ditch at least since 1927. There is no evidence of any such escape at any time. The west bank is about 16 feet above the bottom of the East Soldier. If water were to escape from East Soldier ditch it would be more likely to go out on the east side, not the west. There is no evidence that failure of the tube to function and thereby send water into Spooner extension ditch from the East Soldier is at all probable.

Nor do we think it is shown the roadside ditch will send water from the old river bed into Spooner extension ditch in such increased or unnatural quantities as to cause plaintiffs substantial damage. We believe most of the water from the old channel that will reach Spooner extension ditch would have found its way there over a somewhat more circuitous route if the roadside ditch had not been built. A party is not entitled to injunctive relief merely because water is sent over a more direct course to the same destination it formerly reached. Stouder v. Dashner, 242 Iowa 1340, 1348, 1349, 49 N.W.2d 859, 864; Lessenger v. City of Harlan, 184 Iowa 172, 178–182, 168 N.W..803, 5 A.L.R. 1523; Cowley v. Reynolds, 178 Iowa 701, 708, 160 N.W. 241. See also Maben v. Olson, 187 Iowa 1060, 1065–1067, 175 N.W. 512.

Applicable here is this language from Cowley v. Reynolds, supra, at page 708 of 178 Iowa, "In view of the fact that the extension of the tile * * * could have no other effect than to carry, by a short and practical course, the same water into the same drain into which it would ultimately come, even if brought by the more roundabout course, we see nothing in such situation to call for interference by a court of equity."

It is probably true that some more water would now go through the new ditch into Spooner extension ditch than into East Soldier ditch. This is mainly because about two feet of silt have accumulated in the bottom of the East Soldier since it was last cleaned out about three years before the trial. This accumulation should be cleaned out. A petition for such cleanout was on file with defendant board at the time of trial but no

action had been taken on it. Plaintiffs' engineer concedes that if the two feet of silt were cleaned out water from the old channel would usually go through the roadside ditch into East Soldier ditch.

It is the mandatory duty of defendant board to keep East Soldier ditch in repair and in such condition that it will function properly and perform the service for which it was intended. This duty may be enforced by mandamus. See section 455.135, Code, 1950; Wise v. Board of Supervisors, 242 Iowa 870, 48 N.W.2d 247; Haugen v. Humboldt-Kossuth Joint Drainage Dist., 231 Iowa 288, 306, 307, 1 N.W.2d 242, 252, and citations. We may presume defendant board will perform its duty in this respect and the accumulated silt in East Soldier ditch will be cleaned out. Payne v. Missouri Valley Drainage Dist., 223 Iowa 634, 644, 272 N.W. 618.

We think any substantial damage plaintiffs may suffer will be mainly caused not by the addition of water to the Spooner ditches from the new roadside ditch but by the inadequacy and inefficiency of the Spooner ditches and their outlet in the Soldier river (near the southeast corner of section 6) and of the outlet of that river in the Missouri river. The trial court found that the outlet of the Spooner ditches is impaired and inefficient.

Plaintiffs' major complaint thus lies against the inefficiency of the Spooner ditches, not against the new roadside ditch. Such condition can be remedied only by increasing the efficiency of the Spooner ditches and their outlet. See Schmitt v. Kirkpatrick, supra, 245 Iowa 971, 980, 981, 63 N.W.2d 228, 233; Dullard v. Phelan, 204 Iowa 716, 719, 215 N.W. 965; Cowley v. Reynolds, supra, 178 Iowa 701, 711, 160 N.W. 241; Resser v. Davis, 100 Iowa 745, 69 N.W. 524.

II. Although the foregoing is decisive of the case there are other considerations which entitle defendants to a reversal. We think defendant board was authorized by statute to construct the roadside ditch. It is not claimed it could not properly grade the road nor is complaint made of such action. And, as stated, plaintiffs do not object to the east part of the new ditch between the old river channel and East Soldier ditch.

Section 455.135, as amended by chapter 202, Acts Fifty-

third General Assembly, in 1949, so far as material here, provides:

"When any levee or drainage district shall have been established and the improvement constructed, the same shall be at all times under the supervision of the board of supervisors * * * and it shall be the duty of the board to keep the same in repair. The board at any time on its own motion, without notice, may order done whatever is necessary to restore or maintain a drainage or levee improvement in its original efficiency or capacity, and for that purpose may remove silt * * * and whatever else may be needed to restore or maintain such efficiency or capacity. * * *.

"When the board determines that improvements, which differ from the repairs referred to in the preceding paragraphs, are necessary or desirable, it may appoint an engineer to make such surveys as seem appropriate to determine the nature and extent of such improvements, and to file a report showing what improvements are recommended and their estimated costs * * *. Such improvements may include enlarging, reopening, widening, deepening, straightening or lengthening any drain, changing its location or improving or enlarging the outlet for better service * * *. If the estimated cost of the improvements does not exceed twenty-five percent of the original cost of the district, the board may order the work done without notice."

The quoted statute is the successor to section 1989-a21, Code Supplement, 1913, and, subsequently, section 7556, Codes, 1931, 1935 and 1939, and section 455.135, Code, 1946, which was often before us. "The authority conferred upon boards of supervisors by this section * * * is broad and comprehensive." Nelson v. Graham, 198 Iowa 267, 269, 197 N.W. 905, 906. The authority granted by the earlier statute was not limited to what technically would be repairs but included all that the section provided for. Smith v. Monona-Harrison Drainage Dist., 178 Iowa 823, 826, 160 N.W. 229, 231; Haugen v. Humboldt-Kossuth Joint Drainage Dist., supra, 231 Iowa 288, 308, 1 N.W.2d 242, 253.

The amended statute is clearly broader than the earlier one. It authorizes improvements which differ from the repairs therein referred to and the doing of whatever is necessary to restore a

drain to its original efficiency. The *improvements* now authorized by 455.135 include "lengthening any drain, changing its location or improving or enlarging the outlet for better service."

Section 455.135 and the other drainage statutes "shall be liberally construed to promote * * * reclamation of wet * * * and overflow lands." Section 455.182; Harris v. Board of Trustees, 244 Iowa 1169, 1173, 59 N.W.2d 234, 236; Board of Trustees v. Board of Supervisors, 236 Iowa 690, 695, 19 N.W.2d 196, 199.

█ The word "outlet" as used in section 455.135 includes more than the final outlet of the entire system. A system may have several outlets. Mathwig v. Drainage Dist., 188 Iowa 267, 269, 171 N.W. 125, 126; Walker v. Joint Drainage Dist., 197 Iowa 351, 357, 197 N.W. 72, 74; Hogue v. Monona-Harrison Drainage Dist., 229 Iowa 1151, 1157, 296 N.W. 204, 207; Board of Trustees v. Board of Supervisors, 236 Iowa 690, 695, 19 N.W.2d 196, 199.

█ The Soldier river is one of the drains in defendant district—as much so as the Spooner ditches or the East Soldier. The fact that at this point it is a natural watercourse, not an artificial one, does not change the character of what was done here. Repairs to a natural watercourse which is part of the drainage system are nonetheless repairs under section 455.135. Hogue v. Monona-Harrison Drainage Dist., supra, 229 Iowa 1151, 1158, 296 N.W. 204, 208. Drainage districts frequently utilize part of the course of a natural stream. It is common practice to straighten, dike or otherwise improve them.

If defendant board had decided upon the advice of its engineer it was advisable to clean the silt from the old channel south of the township road in question and straighten it, unquestionably the improvement would be expressly authorized by section 455.135. It would be "enlarging, reopening, widening, deepening, straightening or lengthening [a] drain." As pointed out, this would be a much more expensive and pretentious undertaking than what was done here in a good faith effort to accomplish substantially the same result. We think the roadside ditch is authorized by section 455.135 as much as the alternative plan just mentioned.

As previously explained, the original outlet for water in the Soldier river had been filled in so that when the roadside

ditch was partly built the outlets for such water were the Spooner ditches and East Soldier ditch. What was done here merely sends the water to those same outlets in a more direct and efficient way. In reality it was an improvement to the outlet for better service. It was necessary to restore the drain to its former efficiency and capacity.

Several decisions before section 455.135 was broadened in 1949 support our conclusion. In Mathwig v. Drainage District, supra, 188 Iowa 267, 171 N.W. 125, an additional tile drain was installed, of the same size as the original drain, for a distance of 3953 feet and an intake at a highway was enlarged. We say (page 269 of 188 Iowa), "The effect of the proposed improvement is to enlarge this outlet, and, it seems to us, it clearly comes within the provisions of Section 1989-a21."

Walker v. Joint Drainage Dist., 197 Iowa 351, 358, 359, 197 N.W. 72, 75 (Division II of opinion), upholds as a repair the laying of a new tile line for a distance of 1400 feet parallel to the old tile which was abandoned. We state: "It was simply a more efficient and expeditious manner of repairing the old line than to have actually dug it up and replaced it. It also appears to have been less expensive. No new lands are drained."

Nelson v. Graham, supra, 198 Iowa 267, 197 N.W. 905, approves as a repair the extension of a drain for 1700 feet with a 20-inch tile and an open ditch to a new outlet in the Des Moines river. Right of way for the new improvement was procured and it extended beyond the boundaries of the district. We say (page 271 of 198 Iowa) : "The improvement of the outlet was the evident design of the board. Whether it acted wisely, or extended the improvement beyond the necessary requirements for proper drainage, is not involved."

In Payne v. Missouri Valley Drainage Dist., supra, 223 Iowa 634, 642, 272 N.W. 618, 623, an improvement was built to carry the water from a creek to an outlet ditch through a new settling basin and ditch No. 8 instead of through another such basin and ditch No. 9 as formerly. The opinion states: "We think the board not only had the power, but was burdened with the duty, to dispose of these waters brought down from Cooper Creek through ditch No. 10, and that, in disposing of them through a

settling basin with openings into either ditch No. 8 or ditch No. 9, it was making necessary repairs in the district."

The four decisions last cited are all cited with approval in Haugen v. Humboldt-Kossuth Joint Drainage Dist., supra, 231 Iowa 288, 307, 308, 1 N.W.2d 242, 252, 253, which also fully supports our conclusion. See also Hogue v. Monona-Harrison Drainage Dist., supra, 229 Iowa 1151, 296 N.W. 204.

We have considered the precedents plaintiffs cite—mainly Kelleher v. Joint Drainage Dist., 216 Iowa 348, 249 N.W. 401, and the cases therein cited. The landowners in the Haugen case, supra, relied upon these same decisions (see page 309 of 231 Iowa, page 253 of 1 N.W.2d). They were cited too in Hogue v. Monona-Harrison Drainage Dist., supra, 229 Iowa 1151, 1161, 296 N.W. 204. As in the Haugen and Hogue cases, these precedents, because of the different fact situation, do not rule the case at bar.

The Kelleher case, supra, involves the discarding of an old plan and the substitution of an entirely new scheme which would carry three times the volume of water carried by the old system at a cost many times more than the original cost. Another decision cited to us, Smith v. Monona-Harrison Drainage Dist., supra, 178 Iowa 823, 160 N.W. 229, involves a proposed improvement to cost more than a half million dollars—in 1915 when that was quite a sum. Further, all these precedents were decided before section 455.135 was amended in 1949.

An important function of a county drain is to afford an outlet for drainage of lands through which it runs and other lands in the district that naturally drain into it. Owners of the land just north of the township road west of the old channel could legally have built a lateral drain outletting into Spooner extension ditch which would accomplish substantially what this roadside ditch will do, provided they followed specifications made by defendant board. Code section 455.150 states: "The owner of any premises assessed for * * * any ditch * * * shall have the right to use the same as an outlet for lateral drains from his premises. * * *." See Dullard v. Phelan, supra, 204 Iowa 716, 719, 215 N.W. 965; Cowley v. Reynolds, supra, 178 Iowa 701, 160 N.W. 241; McKeon v. Brammer, 238 Iowa 1113, 1118, 29 N.W.2d 518, 521, 174 A.L.R. 1229.

We need not determine whether section 455.150 expressly gives defendant board the right to construct the roadside ditch. Except for the fact that $406 of its estimated cost is to be charged to the drainage district it does not seem material that the board rather than the adjoining landowners dug such a ditch. Droegmiller v. Olson, 241 Iowa 456, 461, 462, 40 N.W.2d 292, 296.

■ III.  We cannot accept plaintiffs' argument that Code section 308A.16 entitles them to compel defendants to place an opening in the road grade to permit water to flow farther south in the old channel. The language of 308A.16 upon which plaintiffs rely is, "Officers * * * in charge of improvement or maintenance work on any highway shall not * * * turn the natural drainage of the surface water to the injury of adjoining owners. It shall be their duty to use strict diligence in draining the surface water from the public road in its natural channel."

Our holding that plaintiffs have failed to show the probability of substantial injury from the improvement complained of is conclusive against this contention of plaintiffs. The north line of any of plaintiffs' lands that adjoin Spooner extension ditch is a mile south of the township road. Plaintiff Morrow's north line is a mile and a half south of the road. Plaintiff Spooner's north line is two and one-half miles south of it.

As previously explained, what defendants did was merely to provide a short cut for water most of which would reach the Spooner ditches in any event a little farther south. No increased volume of water will be cast upon plaintiffs. There was no real violation of section 308A.16, at least none to plaintiffs' injury or of which they may complain.

What we say in Cowley v. Reynolds, supra, 178 Iowa 701, 708, 160 N.W. 241, 243, where water was sent by a shorter route into a drain where it would ultimately go by a more roundabout course, finds some application here. "We have aimed at all times to construe the drainage law and drainage rights consistently with practical and economic methods of drainage."

■ IV.  Plaintiffs are not entitled to an injunction on the ground defendant board illegally delegated to the county engineer full power and authority to construct the roadside ditch

in any way he might deem feasible. Basis for this contention is that the record of proceedings of the drainage district for May 12, 1951 shows not only the appearance of landowners Guttau and Polen before the board and the direction to Engineer Thomas to make a survey, but also authorization and direction to him to contact a competent contractor to proceed with the necessary work according to the findings of his survey and investigation, the work to be done under his supervision. Also, at the time of trial early in June there was no record of the board meeting held on May 15.

It is shown without dispute by testimony of the engineer and board members there was a meeting on May 15 attended by all members at which the profile and sketch of the improvement prepared by the engineer was discussed by the board and it was moved, seconded and carried that the engineer be directed to engage a contractor to proceed with the work. Plaintiffs contend this evidence cannot be considered because they say it contradicts the record of the meeting of May 12.

Since the record for May 12 discloses that the board's authorization to the engineer to engage a contractor for the work was not made until after the engineer's survey was submitted to the board, it is not very material whether such authorization took place on May 12 or May 15. The profile and sketch was undoubtedly furnished the board. While it is not elaborate it seems to comply with the requirement for a report found in section 455.135, quoted in Division II hereof.

However, we are convinced the oral evidence of what was done on May 15 was admissible. It does not contradict the record of May, 12 but confirms and ratifies it. We have repeatedly held that where there is no record of action taken at a board meeting oral evidence thereof is competent. We said in Rice & Son v. Plymouth County, 43 Iowa 136, 139: "We are not prepared to say that everything done by the board must be entered of record, or that before the county can be bound there must be some writing or equally unequivocal act done or signed by the members of the board and filed and preserved. But there should at least be an assent given by a majority of the members of the board while in session, before the act * * * will be binding on the county."

We have frequently repeated this quotation with approval and as recently as in Greusel v. O'Brien County, 223 Iowa 747, 750, 273 N.W. 853, and Coe v. Board of Supervisors, 229 Iowa 798, 801, 295 N.W. 151, 153.

Clark v. Polk County, 19 Iowa 248, 250, says: "* * * we are not prepared to hold that a *recorded* vote is necessary to authorize the issuance of a county order, in every possible case. If the vote had actually passed, and the failure to *record* it was a mere *clerical omission,* we are clear that such omission could not invalidate an order otherwise legally and properly issued."

Other decisions that support our holding on this question include: Long v. Boone County, 36 Iowa 60, 66; Tatlock & Wilson v. Louisa County, 46 Iowa 138, 140 ("* * * nor is a formal vote by the board or an entry of the fact of such employment of record necessary to the validity of the contract.") ; Jordan & McCallum v. Osceola County, 59 Iowa 388, 13 N.W. 344; Bremer County v. Buchanan County, 61 Iowa 624, 16 N.W. 720; Beatle v. Roberts, 156 Iowa 575, 137 N.W. 1006, Ann. Cas. 1915B 770; Haugen v. Humboldt-Kossuth Joint Drainage Dist., supra, 231 Iowa 288, 319, 1 N.W.2d 242, 258.

See also Kelley v. Drainage District, 158 Iowa 735, 138 N.W. 841; In re County Drains v. Long, 151 Iowa 47, 50, 130 N.W. 152, 153 ("The requirements imposed by statute upon an inferior tribunal should not be too technically construed, lest its efficiency become wholly paralyzed.").

Of course this controversy should be decided upon the record in the case. However, we may properly consider the fact that if defendants were enjoined on the ground considered in this division of the opinion they might do with greater formality what plaintiffs seek to enjoin. See In re County Drains v. Long, supra, 151 Iowa 47, 53, 130 N.W. 152.

Upon consideration of the entire case we hold plaintiffs are not entitled to an injunction. For decree dismissing their petition the cause is—Reversed and remanded.

All JUSTICES concur.