LILLIE S. JOHNSON et al., appellants, v. MONONA-HARRISON DRAINAGE DISTRICT et al., appellees.

No. 48657.

(Reported in 68 N.W.2d 517)

538

February 8, 1955.

Patrick J. Morrow, of Onawa, DeVere Watson, of Council Bluffs, and K. C. Acrea, of Missouri Valley, for appellants.

Prichard & Prichard and Underhill & Underhill, all of Onawa, for appellees.

Lowell C. Kindig, Robert B. Pike and Robert J. Hurst, all of Sioux City, amici curiae.

LARSON, J.—The above-captioned cases were consolidated for trial in the court below, whereby the evidence taken was made applicable to all. It appears in February 1952 the trustees of the Monona-Harrison Drainage District passed a resolution under the provisions of section 455.135, Code of 1950 (now 1954), appointing Keyes C. Gaynor, a graduate engineer with some forty years experience, to make surveys and a report on a proposed repair, cleanout and improvement in the district. Pursuant thereto a report was filed May 8, 1953, which included a suggested plan and an estimation of cost at $490,000. Notice was given and hearings held upon the proposed improvement, and after several adjourned meetings and some amendments were accepted the board on September 12, 1953, adopted the plan and ordered the work done.

The Little Sioux River starts someplace in Minnesota and has a watershed of about 2,800,000 acres. Among other counties in Iowa, it ran through a portion of Monona and Harrison Counties and emptied into the Missouri River. The West Fork of the Little Sioux River came from the west and north and joined the Little Sioux in Monona County, and the lands below this junction were subject to overflow and were nontillable most of the

time. In 1904 the Monona-Harrison Drainage District was established to provide suitable drainage for these lands, and a main ditch constructed tapping the West Fork of the Little Sioux and running somewhat parallel with the Little Sioux southwestward, which also emptied into the Missouri River. It was successful in carrying the waters of the West Fork as well as many other drainage ditches, and sometime later a so-called "equalizer" or connecting ditch was constructed between the main drainage ditch and the main channel of the Little Sioux River. The theory was that water would flow either way depending upon the stream carrying the greater volume at a given time, but as time went on, the equalizer, providing a somewhat shorter distance to the Missouri River, became the main channel and carried nearly all the water from the Little Sioux River to the main ditch and thence to the outlet in the Missouri River. The flow during the flood of 1952 showed a measured flow of 18,000 second feet in the Monona-Harrison Drainage Ditch and only 3000 second feet in the Little Sioux River south of the equalizer. As a result the lower Little Sioux became badly silted, and brush and trees have grown in the river bed. On the other hand the Monona-Harrison main ditch had to be deepened, widened and enlarged until it is now three times its original size, and the expense of levee repairs, cleanouts and other necessary cost amounting to some $800,000 between the years 1943 and 1953 places an enormous repair burden on the taxpayers in the district.

The trustees as well as United States Government officials have realized for some time that the main channel of the Little Sioux River south of the equalizer should be cleaned out, straightened and rehabilitated. A constant search was under way to find a feasible plan within reasonable cost, and several suggestions were under study. The most recent government Plan "O" called for an expenditure of about $18,000,000 and a rather elaborate improvement. The trustees had considered and rejected as too costly a proposal costing over $1,000,000. Persons interested are divided, and perhaps this is the real crux of this controversy, on whether to await possible favorable government action on Plan "O" or to act now upon the least expensive feasible plan possible to obtain. The board appears to have selected the latter plan with most property owners of the district in accord.

With this background we have the February action of the trustees appointing an engineer to make surveys and file a report for the board's consideration. It is clear in preparing this report and plat Mr. Gaynor, the engineer, did not go to the expense of making a completely new survey and taking cross sections at the usual stations for the some seventeen miles involved in the project. Many earlier surveys had been made by other reliable parties, and he testified they were used to discover the extent of the cuts necessary to clean out and to construct the proposed new channel. This, plaintiffs say, discloses a grievous error, for in many places silting, in the past six or more years since those surveys were made, makes them inaccurate and unreliable.

The report and recommendation filed May 19, 1953, by Engineer Gaynor contained the following:

"Par. 1. During the last ten years there has been a continual increase in the amount of water coming down the Little Sioux River, the Maple River and other tributaries to the Monona-Harrison main ditch. * * * Inasmuch as the Monona-Harrison ditch was not originally designed or constructed to carry so large an amount of water, the ditch has been severely damaged during the past eight or ten years, and has required the expenditures of large sums of money every year to keep it in operating condition.

"Par. 2. * * * when the water is high in the Monona-Harrison main ditch it has been impossible to properly drain the land in the Monona-Harrison District, and because of that fact a large portion of the land in the district has had a nearly complete crop failure during the last several years.

"Par. 3. For the reasons above mentioned, I recommend the cleaning out of the old channel of the Little Sioux River from the mouth of the Maple River to the Missouri River. The cleanout from the Maple River to the Brown Grade in Monona County will average about six feet in depth, and from the Brown Grade to the Missouri River it will average about four feet in depth.

"Par. 4. I recommend the clearing of all brush and trees from the entire bed of the Little Sioux River south of the mouth of the Maple River, except where the cutoffs are constructed.

"Par. 5. I recommend the construction of two cutoffs as follows:

"a. The Hanson cutoff to be approximately two miles in length with 198 feet of right-of-way with a 50-foot bottom, with one to one side slopes, and an 80-foot top. The cut will average about 15 feet. * * * [Specific location set out here].

"b. The Fredrickson cutoff to be approximately two miles in length with 198 feet of right-of-way, the ditch to have a 50-foot bottom, with one to one side slope. The cut will average about 12 feet and will have a 74-foot top. The specific location is as follows: [Description here].

"Par. 6. I recommend that wherever the cutoffs across the channel of the Little Sioux River that the old channel be completely filled at the northern end. I further recommend that they also be filled at the southern end but that tubes be installed. I also recommend that the dikes on all cutoffs be set back to the full limits of the right-of-way.

"Par. 7. I recommend the construction of a concrete spillway in the Southeast Quarter of Section 17 and the West part of Section 16, Township 83, Range 44, said spillway to be 125 feet long, to be built, in the first instance, about seven feet below the ground level, and to be constructed so that it may be raised from time to time until it reaches two or three feet below the level of the ground. (Eventually, it may be possible to close the equalizer entirely.) This spillway is to be built along the west side of the Hanson cutoff, north of the present equalizer. The present channel of the Little Sioux River is to be closed off between the Hanson cutoff and the present equalizer, both north and south of the equalizer.

"Par. 8. I recommend the construction of desilting basins for the Beaver and Cottonwood Creeks, the desilting basin for Beaver Creek to be about 160 acres in extent, and located in Section 21, Township 83, Range 44, the desilting basin for Cottonwood Creek to be about 80 acres in extent and located in Section 28, Township 83, Range 44.

"Par. 9. I recommend the cleanout of the Little Sioux River from the point where it leaves the present Monona-Harrison

Drainage District to the Missouri River, and that either the land through which said river flows be taken into the drainage district, or that easements be secured from the landowners granting permission for such a cleanout.

"Par. 10. Attached hereto and made a part of this report is a plan, consisting of three sheets, which shows the portion of the Little Sioux River to be cleaned out, as well as the proposed cutoffs. [See attached sketch.] There is also attached a profile of the Little Sioux River, consisting of one sheet, upon which I have also placed a drawing showing a characteristic cross section of the Little Sioux River and a drawing of a cross section of the proposed cutoffs. This profile was prepared from certain cross sections made some years ago by the United States Corps of Engineers and from other data which I have obtained by my own surveys.

"Par. 11. I estimate the cost of such a project to be as follows:

| | | |
|---|---|---:|
| a. | Construction of spillway | $ 75,000.00 |
| b. | Clearing brush and trees | 75,000.00 |
| c. | Right-of-way at $150.00 per acre | 15,000.00 |
| d. | Damages | 10,000.00 |
| e. | Excavation of approximately 2,000,000 cubic yards at 12c | 240,000.00 |
| f. | Desilting basins | 25,000.00 |
| g. | Miscellaneous expenses, including engineering expenses, attorney fees, title examinations, publications, issuing of bonds, court costs, etc.. | 50,000.00 |

Total estimated cost.............$490,000.00"

The following map or sketch roughly discloses the so-called Gaynor plan:

The July 15, 1953, amendment further stated:

"At the hearing on my report on the proposed channel improvements on the Little Sioux River in the Monona-Harrison Drainage District held July 2, 1953, at the courthouse in Onawa, Iowa, it developed that a majority of the taxpayers present were willing to pay for a wider right-of-way for the proposed cutoffs and as I have always recommended as wide a right-of-way as possible I now recommend that my report above-mentioned be amended by increasing the width of the right-of-way for the proposed cutoffs from one hundred ninety-eight feet to two hundred fifty feet.

This will require the purchase of 24.8 acres of
land @ $200.00 an acre........................$ 4,960.00
levees placed farther back...................... 20,000.00
I recommend a third cutoff on the East ½ of the
SE¼ of Sec. 4-83-44 between Peterson and Knudson.
This will require the purchase of:
15 acres of R. of W. @ $200 an acre.............. 3,000.00
100,000 c. yds. of earth work @ .12............ 12,000.00
 _____

 Total added cost................$39,960.00

"I also recommend that the desilting basin for Beaver Creek be located adjacent to the corner of Sections 21, 22, 27 and 28 where there is sufficient low land for it, and that the desilting basin for Cottonwood creek be located in the NE¼ of the SE¼ of Sec. 28. The cost of these basins should not exceed the original estimate."

In their various petitions plaintiffs allege that the defendant board of trustees acted illegally and beyond their jurisdiction in passing the resolution approving the report of Engineer Gaynor. Plaintiffs further contend the board of trustees failed to comply with chapter 455, Code of 1950, in that the engineer's report contained insufficient information for the board to fairly decide on the feasibility of the plan, that the plan was not practical or feasible, and that the cost and expense of the proposed plan were prohibitive and confiscatory and exceeded any benefits which would be received by the plaintiffs. In addition, they complain

that the board did not secure the approval of said report and plan from the Iowa Natural Resources Council as required by chapter 455A, Code of 1950, and especially section 455A.19.

There were other complaints referring to the lack of provisions for right of way to place excavated dirt east and south of the district boundary when cleaning out the old bed of the Little Sioux, and the fact that items of cost were not disclosed concerning the spillway, the concrete work, and the fills required in the old river bed, and their exact height and length; also that the estimate on tree and brush removal from the river bed was far too low, and that cutting the channel on the first cutoff to 50 feet from the river bed of 100 feet would cause flooding and silting above the cutoff to the destruction and damage of adjoining property owners. It was conceded such backing of water for about two miles would be possible during high water, and that until the flow in the lower end of the Little Sioux scoured out the new cuts, the spillway would be needed to carry surplus water to the Monona-Harrison ditch. Defendants state the maintained height of the spillway would govern the extent of the backwater and could be easily varied. Most property owners in the district have expressed a hope that the equalizer could be eventually closed, for it appears the equalizer has worked only one way and a rock weir placed in it came too late and could not solve the problem. Once the silted-up lower Little Sioux had diminished the flow therein, a serious backing up of the river above the raised weir resulted. It then became obvious the lower Little Sioux had to be cleaned out and straightened, or be allowed to change its course permanently to reach the Missouri River by way of the Monona-Harrison ditch. As previously stated, during floodtimes that ditch is hard pressed to care for the West Fork and its tributaries, and damage results in the territory of the lower ditch through broken dikes, silting and other washouts.

The very able trial court rendered decree and judgment in favor of the defendants on the 15th of January, 1954, and dismissed the appeals. While issues involving claims for damages and the board's action on the question of reassessment were a part of the original actions, those matters are not involved in this appeal.

Our difficulty in discerning the issues involved when this case was presented is further emphasized by the blanket assignment of error found in plaintiffs' brief and argument as follows: "Every question submitted to the trial court and each and every finding, conclusion of law or decision covered by the judgment and decree are presented on this appeal."

While this action is triable de novo before us, time and space will not permit such detailed discussion herein, but we shall try to determine the real issue and, in so doing, touch upon what we consider the minor ones involved.

As we understand the plaintiffs' position, they contend it is obvious from the survey, plan and estimate filed with the board by the engineer, that neither the board nor those notified of the proposal, as by law provided, could with any degree of certainty determine its feasibility, practicability or cost. We do not understand plaintiffs deny that large discretion is vested in the board. However, if the board's conclusion is supported by substantial evidence, we may not set its action aside. Generally it is plaintiffs' contention, from all the facts disclosed by the evidence, that statutory compliance by the board and its engineer does not appear.

I. We think plaintiffs have not shown themselves entitled to the relief prayed. Such relief should not be granted unless it appears the defendants' action of approval amounted to fraud, was in excess of jurisdiction, or that it amounted to an abuse of discretion. The burden to prove such unlawful action rests upon the plaintiffs. We have so held in many cases, some of which were drainage cases. Schmitt v. Kirkpatrick, 245 Iowa 971, 977, 63 N.W.2d 228, and citations; Morrow v. Harrison County, 245 Iowa 725, 731, 64 N.W.2d 52. We feel plaintiffs have not by a preponderance of the evidence proven either of these necessary elements of their case. The board's good faith was not directly attacked, and, while the information and estimates furnished it were shown not to be absolutely accurate, the failure to require or consider detailed and specific plans and specifications did not amount to a willful neglect of statutory requirements such as to void the exercise of its best judgment and discretion.

It is true some discrepancies were pointed out in the proposals of the engineer, and they were apparently pointed out and considered at the hearings before the board as well as in the trial below.

A similar situation confronted the court in Shaw v. Board of Supervisors, 195 Iowa 545, 551, 192 N.W. 525, 528, where the plan of the engineer, adopted by the board, was attacked by plaintiffs who offered testimony of two engineers. Their plan was different from that of the board's engineer, and we said we would not from the record challenge the competency of any of the three engineers; that both plans might be satisfactory, but we were only concerned about the feasibility and practicability of the plan recommended by the engineer for the board and adopted by them. The issue raised was, will the proposed plan work, and will the costs be greater than the benefits, and we said: "Always, if regular and legal proceedings have been pursued up to the point of final action, this vital question is to be settled, of whether the cost of the proposed improvement is excessive; * * *." We held there, after carefully reviewing the facts, the appellants did not sustain the burden of making a clear and satisfactory showing such as would warrant us in disturbing the board's action.

In the case before us the hearings may have indicated the estimated cost was too low, but as the federal Plan "O" would require as the district's share an expenditure of some $2,000,000, we think the cost of the improvement proposed, though appearing somewhat larger than estimated by the engineer, may reasonably result in benefits fully commensurate with the expense of the improvement, and the showing made by plaintiffs is far from conclusive that it will not.

We are aware of our decision in Zinser v. Board of Supervisors, 137 Iowa 660, 114 N.W. 51, and in Focht v. Board of Supervisors of Fremont County, 145 Iowa 130, 123 N.W. 769, but both were decided under the provisions for the establishment of a new district where a much more certain plan and estimate of cost is required to substantiate a finding of feasibility. See sections 455.12 to 455.18 inclusive for statutory requirements on establishments.

In the Focht case, supra, 145 Iowa 130, at 148, it is true we said, after a careful review of the evidence, the entire scheme was so incomplete, so problematical, and the expense so uncertain that we were inclined to agree with the district court in its holding that it should not have been approved and established. The evidence clearly disclosed no substantial compliance with specific statutory requirements for the establishment of a new drainage district.

We set out in Zinser v. Board of Supervisors, supra, 137 Iowa 660, at 665, what is reasonably expected in engineers' reports in establishment cases, when we said: "Unless he performs them [his duties under sections 455.12 to 455.18 inclusive] there is no assurance that the work will be prosecuted on scientific or economic lines. All interested have the right to know from him (1) whether in his opinion the improvement should be made, and, if so, (2) the character of such improvement, (3) the several tracts of land which will be affected and how each will be affected, (4) the probable cost of the improvement, and (5) such other matters as he may deem material."

It is true the evidence here produced by plaintiffs tended to show the slope was not sufficient to develop scouring velocities and would not scour out the silt in the river above the equalizer, that the slope of .02 of a foot per 100 feet, or twenty feet in the seventeen miles to the mouth, was insufficient, and also that the 50-foot channel and slopes of one to one are not satisfactory; also that no profile and cross sections appear on the plan, no provisions for additional right of way, aside from the spillway and cutoffs, were provided, and no showing made of provisions to deposit the dirt excavated from the old river bed; that there was no showing of the size of the spillway or an estimate of the concrete required, and no estimate of yardage of dirt necessary to provide dams to keep water from old channel cutoffs. Plaintiffs contend these and other essential details are missing and made the plan so inadequate that it did not disclose substantial compliance with the statutory requirements. It may be such contentions would be upheld were this an original establishment, but clearly the same detailed requirements are not found in repair or improvement projects of an existing district.

550

The trial court held that plaintiffs had failed to show clearly that the trustees did not consider all of these matters and thus abused their power or discretion, or that the proposed improvement was not generally understood by the trustees or the objectors. It further held there was no fraud or misrepresentation shown and the board's action should not be set aside.

■ We may agree that the survey and plan is quite general and somewhat incomplete, but we are not in a position to substitute our discretion as to the adequacy of the survey and plan for that of the board. We cannot say here it was not "appropriate." Morrow v. Harrison County, supra, 245 Iowa 725, 64 N.W.2d 52. While there are not the fine details of final plans and specifications usually found in such construction before it is started or contracts let thereon, yet such details are not specifically required in section 455.135, Code of 1950.

■ In the case before us a duty fixed by statute on the board was being performed and, we think, a much stronger showing is necessary to take from the board jurisdiction to act, or to show an abuse of its discretion than where the district is being first established. See Hartshorn v. Wright County Dist. Ct., 142 Iowa 72, 120 N.W. 479; Wise v. Board of Supervisors, 242 Iowa 870, 48 N.W.2d 247; Haugen v. Humboldt-Kossuth Joint Drain. Dist., 231 Iowa 288, 306, 307, 1 N.W.2d 242, 252, and citations. Repairs and improvements found necessary and desirable by the board should not be defeated unless a very substantial showing is made that the board had no fair information or basis upon which to exercise its discretion and action.

■■ II. Jurisdiction to act in this matter was acquired by the board upon the engineer's report and recommendations. As heretofore pointed out, we believe this report and plan was sufficient to acquaint all interested persons, including the experienced board members, of the general plan and scope of the improvement. This is all that is required under the broad powers given the board by the 1949 amendment to section 455.135. See chapter 202, section 21, Acts of the Fifty-third General Assembly. The requirements imposed by statute upon an inferior tribunal should not be too technically construed, lest its efficiency and purpose become wholly paralyzed. Morrow v. Harrison County,

supra, 245 Iowa 725, 64 N.W.2d 52; Kelley v. Drainage District, 158 Iowa 735, 138 N.W. 841; County Drains v. Long, 151 Iowa 47, 130 N.W. 152.

Section 455.135, Code of 1950 (now 1954), must be liberally construed. It was evidently passed to remove considerable confusion as to what projects were repairs and what were improvements. The board's powers and discretion were extremely broad as to repairs, and somewhat limited as to improvements, prior to the above amendment of this section. The new section 455.135, as we have said, broadened the powers of the board, with only a notice to those interested of the general plan necessary to authorize their action for the proper maintenance of the district. A substantial compliance with the spirit of the statute was shown, and though detailed plans and specifications such as would be required for construction bids were not submitted, such are not contemplated as necessary under this statutory provision. The plans and recommendations were adequate to apprise anyone concerned and interested in the general nature and extent of the proposal and give a general idea of its cost. More was not required under section 455.135, Code of 1950. On this question we said in Morrow v. Harrison County, supra, at page 739 of 245 Iowa, page 61 of 64 N.W.2d: "The profile and sketch [submitted by the engineer] was undoubtedly furnished the board. While it is not elaborate it seems to comply with the requirement for a report found in section 455.135 * * *." We held there the report of the engineer was sufficient to confer jurisdiction upon the board and bring the matter before it.

Due notice having been given, hearings were held, and it plainly appears the proposed plan was thoroughly discussed at several well-attended meetings, adjourned from time to time from May 8 to September 12, 1953, before its final approval by the board. Most persons interested in the proposal were present at one meeting or another, and it seems reasonable that they understood, generally at least, the proposed plan and voiced their opinions to the board as to its feasibility.

 III. We now come to the question as to the board's duty, power and authority under section 455.135, Code of 1950 (now 1954). We have often stated that it was the mandatory duty of

the board to keep the outlets in the district in repair and in such condition that they will function properly and perform the services intended. This duty, we said in the Morrow case, supra, may be enforced by mandamus. Wise v. Board of Supervisors and Haugen v. Humboldt-Kossuth Joint Drain. Dist., both supra. The Little Sioux River is of course a part of the drainage system. Morrow v. Harrison County, supra, 245 Iowa 725, 733, 64 N.W.2d 52, 57, and cases cited therein.

While this section now largely eliminates the distinction between improvements desirable and repairs necessary, it seems clear this project falls more nearly within our former classification of repairs. In McGuire v. Voight, 242 Iowa 1106, at 1111, 49 N.W.2d 472, 474, we quote with approval from Haugen v. Humboldt-Kossuth Joint Drain. Dist., supra, at page 305 of 231 Iowa, and page 251 of 1 N.W.2d, as to the method of determining when the proposal is a repair: "What is of real importance in determining this question must be found in the conditions as they existed, and the nature and purpose of the work done." The restoration of the former carrying capacity of the lower Little Sioux River clearly was in the nature of a repair.

The nub of the controversy then seems to be whether or not the engineer's report and recommendations were adequate and sufficient for the board to base its discretion without abuse. Having determined the engineer's report was a substantial compliance with the requirements of the statute, we may not set aside the board's determination nor substitute our judgment for their judgment as to the plan's feasibility, unless by clear and convincing evidence their judgment appears erroneous.

What are the statutory requirements? Defendants point to the wording of section 455.135, which provides in part: "When the board determines that improvements, which differ from the repairs referred to in the preceding paragraphs, are necessary or desirable, it may appoint an engineer *to make such surveys as seem appropriate* to determine the nature and extent of such improvements, and *to file a report showing what improvements are recommended and their estimated costs,* which report may be amended before final action." (Emphasis ours.)

It is the contention of the board that it was given the power and authority to determine whether or not a submitted survey is

sufficient and appropriate to determine the nature and extent of the proposed improvement, and once decided in good faith by the board it is not subject to court review. This view appears to have been favored somewhat by the trial court. We need not go that far herein. It is true when the estimated costs of the proposed project are less than twenty-five percent of the original cost of the district, the board may order the work done without notice. When the estimate is above twenty-five percent, notice must be given, and "At such hearing the board shall hear objections to the feasibility of such improvements * * * as may be presented by or for any taxpayer of the district. Following the hearing the board shall order made such improvements as it deems desirable and feasible * * *." Section 455.135, Code of 1950 (now 1954).

While such language is strong, it does not indicate an absolute discretion vested in the board, for in the same paragraph we find the following: "Any interested party shall have the right of appeal from such orders in the manner provided in this chapter."

We hold such matters reviewable to the extent of ascertaining whether the action of the board was in good faith and supported by substantial evidence, or whether the factual evidence was so insufficient as to disclose an abuse of discretion by the board in ordering the work done. See Focht v. Board of Supvrs. of Fremont County, supra, 145 Iowa 130, 123 N.W. 769. In the Focht case Justice Deemer, in discussing this legislative power of the board, points out that such power cannot be delegated, but only the power to determine facts upon which certain results may follow. He concludes by saying, at page 145 of 145 Iowa, though such matters are reviewable: "* * * some weight should be attached to its [district court's] findings because of its superior advantages to know the exact situation by reason of having the witnesses before it and an opportunity to know the very truth of the matter."

Such reasoning we feel is applicable in the case before us.

What then is a substantial compliance with the spirit of the statute? It is necessary, we think, in determining this question that we also review the report, survey and estimate, to decide

for ourselves whether or not it was reasonable to consider such survey and report appropriate to adequately determine the nature and extent of the improvement. See Kelley v. Drainage District, 158 Iowa 735, 138 N.W. 841, and County Drains v. Long, 151 Iowa 47, 130 N.W. 152, both supra. This we have carefully done.

It is to be noted that the requirements as to detail set forth in sections 455.12 to 455.18 inclusive, where the district is originally established, are not repeated or referred to in section 455.135. It would seem a reasonable conclusion, therefore, that the legislature did not require such specific plans at the outset of such a proposed repair or improvement. The legislature must have felt that some appropriate plan and survey less in detail than that required in sections 455.12 to 455.18 was necessary for trustees and interested parties in an existing district, for they are already familiar with problems in drainage districts. Considering all this, and viewing the evidence in the position of a trustee or interested person of an existing district, we cannot hold here the board abused its discretion in accepting and approving the general and perhaps incomplete plan and survey as appropriate, especially after the extended hearings and discussions concerning the adequacy of the plan, survey and estimate. "The authority conferred upon boards of supervisors by this section * * * is broad and comprehensive." Nelson v. Graham, 198 Iowa 267, 269, 197 N.W. 905, 906. Also see Smith v. Monona-Harrison Drain. Dist., 178 Iowa 823, 826, 160 N.W. 229, 231; Haugen v. Humboldt-Kossuth Joint Drain. Dist., supra, 231 Iowa 288, 308, 1 N.W.2d 242, 253.

In Morrow v. Harrison County, supra, at page 734 of 245 Iowa, page 58 of 64 N.W.2d, we said: "The amended statute is clearly broader than the earlier one. It authorizes improvements which differ from the repairs therein referred to and the doing of whatever is necessary to restore a drain to its original efficiency. The *improvements* now authorized by 455.135 include 'lengthening any drain, changing its location or improving or enlarging the outlet for better service.'"

We also said therein (page 735) regarding a similar possible cleanout: "If defendant board had decided upon the advice of its

engineer it was advisable to clean the silt from the old channel * * * in question and straighten it, unquestionably the improvement would be expressly authorized by section 455.135. It would be 'enlarging, reopening, widening, deepening, straightening or lengthening [a] drain.' "

Several decisions, even before section 455.135 was *broadened* in 1949, support our conclusion that this proposal was little more than a repair. Nelson v. Graham, supra, 198 Iowa 267, 197 N.W. 905, approves as a repair the extension of a drain for 1700 feet with a 20-inch tile and an open ditch to a new outlet in the Des Moines River. There also a right of way for the new improvement was procured and it extended beyond the boundaries of the district.

The burden to dispose of the waters brought down the Little Sioux and its tributaries was on the board and its powers were commensurate. Payne v. Missouri Valley Drain. Dist., 223 Iowa 634, 272 N.W. 618. It must be done with the least damage to others, and the excessive burden placed on the Monona-Harrison ditch of recent years was apparent to everyone.

Section 455.135 and other drainage statutes "* * * shall be liberally construed to promote * * * reclamation of wet * * * and overflow lands." Section 455.182, Code of 1954; Harris v. Board of Trustees, 244 Iowa 1169, 1173, 59 N.W.2d 234, 236; Board of Trustees of Monona-Harrison Drain. Dist. v. Board of Supervisors, 236 Iowa 690, 695, 19 N.W.2d 196, 199.

Here we conclude the action of the board in receiving, considering and approving the engineer's report, and in ordering the improvement done, is subject to review by the court. After carefully reviewing the evidence we must agree with the trial court and the board that it was sufficient to justify the finding that such a project is feasible and proper as proposed. Hartshorn v. Wright County Dist. Court, 142 Iowa 72, 120 N.W. 479, and Morrow v. Harrison County, both supra.

IV. There is a further complaint that this project could not be ordered done without first obtaining the approval of the Iowa Natural Resources Council under chapter 455A. While the trial court held the plan submitted by the district had the approval "in principle" by the council before the September

12th approval of the plan, we are not convinced such approval is necessary prior to the actual commencement of the work or contracts let for the construction of the structures, dams, obstructions, deposits, or excavations required by the plan.

It is our conclusion that the prior approval of the Iowa Natural Resources Council under chapter 455A, Code of 1954, is not required before approval action is taken by a drainage district board under section 455.135, Code of 1954. It would be most unlikely that the legislature intended that this council pass on the feasibility of such a repair or improvement project before the drainage board could do so. Section 455A.22 only requires the council's approval before the district "* * * shall *construct* or *install* any works of any nature for flood control * * *." (Emphasis ours.) It is quite apparent from what we have said as to the statutory requirements of the engineer's reports and plans for board action, that such plans and specifications may not be adequate for the council's consideration and action. Clearly this statute requires more detailed information such as would be required when asking for bids on the proposed construction.

It is also quite clear the council has no power to reject the proposal on general principles, but must in their action of disapproval "* * * set forth the objectionable features so that the proposed works and the plans and specifications therefor may be corrected or adjusted to obtain the approval of the council." Section 455A.22, Code of 1954. Negotiations between the proposer and the council as to details are contemplated so that "sound and accepted engineering practice" will be followed in obtaining proper state-wide flood control. Technical supervision, rather than feasibility of a project, is contemplated in this chapter, and this clearly may follow, as well as precede, the drainage board's action on the project's feasibility. In other words, the council does not act on policy but on ways and means, and details may be worked out and adjusted to meet reasonable and proper suggestions and requirements by the council before the contracts are let or the work started. No greater restriction is imposed, we think, by chapter 455A, Code of 1954.

Upon the whole record we hold the action of the defendant Monona-Harrison Drainage District Board was not shown to

have been in excess of its jurisdiction, nor to have abused its discretion in approving the Gaynor plan and ordering the work done, and that the action of the district court in dismissing plaintiffs' appeal as to this issue should be affirmed.—Affirmed.

All JUSTICES concur.