C. A. Beatle, Appellant, v. T. P. Roberts, et al.

**Intoxicating liquors:**  CANVASS OF CONSENT:  WHEN TO BE MADE. Statements of consent to the sale of liquor must be canvassed by the board of supervisors at a regular meeting of that body as fixed by statute, or at a future, date to which such meeting has been adjourned.

**Same:**  SUPERVISOR MEETINGS:  ADJOURNMENT.  Where the board met for the regular January session, two of its members having just been re-elected, and transacted the unfinished business of the preceding year and thereafter the newly elected members qualified, the new board organized and proceeded with its business without other interruption, there was in fact no final adjournment of the regular session, although their record showed an adjournment *sine die;* as an adjournment contemplates the act of separation and departure of the members of the board for some period of time:  So that the board was in regular session and could legally canvass the statement of consent at that meeting.

**Same.**  Each session of a board of supervisors necessarily terminates prior to the day fixed by statute for a succeeding regular session.

**Same:**  QUALIFICATION OF SUPERVISORS.  Newly elected supervisors should qualify immediately upon the convening of the regular January session of the board; but re-elected members failing to do so are authorized to act until their subsequent qualification; besides, in this instance, there was a quorum for the transaction of business without them, and in either contingency the business was legally transacted.

**Same:**  ORGANIZATION OF BOARD.  The statute requiring a newly organized board of supervisors to elect one of its members chairman is directory in character, and mere delay in doing so will not impair the validity of its acts.

**Same:**  PAROL EVIDENCE:  ADMISSIBILITY.  Oral evidence that there was no final adjournment of the board was not in contradiction of

the recital of an adjournment *sine die,* but was admissible to aid in determining from the record what was in fact done.

**Boards of supervisors:** AMENDMENT OF RECORDS. A board of supervisors has power to amend its record so that it shall speak the truth, but an amendment showing that the board took a recess rather than adjourned to another day was not material; as the terms are synonymous and mean a postponement to a time specified.

**Same:** ADJOURNMENT OF MEETINGS. The board of supervisors has power to adjourn its meetings from day to day; and where the record shows that an adjournment was taken for the purpose of transacting business, which for some stated reason could not then be done, the date to be determined by the happening of a future event, as the completion of an examination by an expert with the county treasurer's books, the adjournment was from time to time, within the meaning of the statute.

*Appeal from Union District Court.*—HON. THOS. L. MAXWELL, JUDGE.

TUESDAY, OCTOBER 15, 1912.

THE district court approved of the finding that the statement of consent to the sale of intoxicating liquors in the city of Creston was sufficient. The plaintiff, who objected to such statement, appeals.—*Affirmed.*

*Carl Stanley,* and *H. H. Sawyer,* for appellant.

*D. W. Higbee* and *S. R. Allen,* for appellees.

LADD, J.—A statement of consent to the sale of intoxicating liquors in the city of Creston was filed with the county auditor in February, 1911, and canvassed by the board of supervisors of Union county, March 20th and 21st following. An objection that the supervisors were not in regular session was interposed, but overruled, and the statement found sufficient. On appeal the district court approved this ruling.

I.   Section 2448 of the Code requires such canvass to
be made at a regular session of the board of
supervisors, and this would be at a time fixed
by statute for the convening of that body,
or at a fixed future date to which such a
meeting is adjourned. *Butterfield v. Treichler*, 113 Iowa,
328.

1. INTOXICATING
LIQUORS: can-
vass of con-
sent: when to
be made.

The time for the first session of the year is designated
by section 412 of the Code Supplement as the second secular
day of January, which in 1911 was January 3d, and the
supervisors met on that day.   There were
five members, two of whom had been re-
elected, and they proceeded to transact the
unfinished business of the previous year.   Later they ad-
journed until the next day, the record of the proceedings
during which contains the following: "And now, the hour
of 1:30 o'clock p. m. having arrived, it was moved by
Sullivan and seconded by Davale that the board do now
adjourn *sine die*.   Motion carried and adjournment de-
clared.   Board adjourned *sine die*."   Immediately follow-
ing that quoted, and on the same day, this appears of
record: "And now, the board of supervisors were called
to order by the auditor and the new members-elect, White and
Roberts, were sworn.   Roll call showed all members present.
.  .  .   On motion of Wallace seconded by Roberts, Mr.
Sullivan was elected chairman for the ensuing year."   The
evidence discloses that there was no change in the personnel
of the board, that the members did not leave their seats be-
tween the adoption of the first motion and the so-called
reorganization, and that one followed immediately upon the
other.   The transaction of business was uninterrupted, save
by the performance described, and adjournments were
taken from day to day until January 6th, when there was
an adjournment which will be considered hereafter.   While
the motion was sufficient in form to evidence an adjourn-
ment, the record as a whole affirmatively shows that no

2. SAME:
supervisor
meetings:
adjournment.

adjournment was in fact taken. An adjournment is an act, not a declaration. It is an act of separation and departure, and, until this takes place, the adjournment is not complete. So it has been held that, although an adjournment of court had been announced and the judges had risen to go, court was still in session and might receive a verdict. *Persons v. Neigh,* 52 Pa. 199. To adjourn means the same thing as to postpone, and, while more frequently used to indicate the putting over to another day, it has acquired the meaning of suspending what is being done for a period which may be less. *La Farge v. Van Wagenen,* 14 How. Prac. (N. Y.) 54. In *People v. Martin,* 5 N. Y. 22, 26, adjournment is defined as putting off until another time or place. In *French v. Higgins,* 77 Wis. 121 (45 N. W. 817), the court, after mentioning that Webster says the word "adjourn," both in England and this country, is applied to all cases in which public bodies separate for a brief period with a view to meeting again, said: "As applied to a justice's court, it signifies, we think, not only that the justice ceases to exercise his functions in the particular case for the time being, but that he and the parties, witnesses, jurors, and officers in attendance, separate from the place of trial, so that there remains no court at such place. If that result is accomplished, it is an adjournment, no matter by what name the justice designates the proceeding in his docket. If that result is not accomplished, it is not an adjournment, but a mere suspension of the proceedings in the cause for a time." See, also, *Bispham v. Tucker,* 2 N. J. Law, 253; *People v. Draper,* 1 N. Y. Cr. R. 138. "An adjournment is suspension of a judicial tribunal or other official body until a time certain, or definitely where the adjournment is without day." 1 Ency. Pl. & Pr. 238.

An adjournment, then, may mean merely a temporary suspension of business or the postponement thereof until some future date.

All members of the board of supervisors were present the day on which they were required by law to convene, and, even though some of them may have imagined that the session was merely the continuance of the November session, this was not so. The law in fixing the time for the first session of the year necessarily defined the limit beyond which the session previous might not extend. In other words, each session of the board necessarily terminates prior to the day fixed by the statute for another meeting.

3. SAME.

The two members who had been re-elected should have qualified immediately, but even without them there was a quorum for the transaction of business. Moreover, though their terms had expired on the first Monday in January, they were authorized to serve until their successors had qualified. Section 411, Code Supplement.

4. SAME: qualification of supervisors.

Section 415 of the Code requires the board of supervisors, at its first meeting in the year, to "organize by choosing one of their members as chairman, who shall preside at all its sessions during the year." This means that before proceeding to the transaction of business at the meeting on the second secular day of January, the members should organize as required, but the statute is directory in character, and the mere delay in effecting such organization did not impair the validity of anything done.

5. SAME: organization of board.

Of course, there was no occasion for the entries concerning adjournment. The business required to be transacted at the January session had not been disposed of, and the entire record demonstrates that the board did not entertain the purpose of separating and terminating the session. Therefrom it appears that they did not do so, and the oral testimony was not received to contradict the record, as seems to be assumed by appellant, but to aid in determining from the

6. SAME: parol evidence: admissibility.

record, which is contradictory, what, in fact, was done. We are satisfied that there was no final adjournment of the board, but merely a temporary suspension of their business for the purpose of effecting organization as required.

II. The board, having disposed of the business before it, save settling with the county treasurer, the following entry was made January 6, 1911: "On motion the board

7. BOARDS OF
SUPERVISORS:
amendment
of records.

adjournment to meet at the call of the county auditor for the purpose of receiving the report of the expert accountants and the transaction of regular business." On the 13th of the same month the supervisors met on the call of the county auditor, and thereafter adjournments were made from time to time until March 20, when the canvass was begun. On March 21st the board amended the record of January 6, 1911, so as to read: "And now it is moved and seconded and carried that this board do now take a recess until the expert accountants have completed their examination of the treasurer's account, and that the auditor so notify the several members when said examination is completed, and that they then at once resume and complete the business now necessarily delayed." That such a body may so amend its record as that it shall speak the truth can not well be questioned. *Tod v. Crisman,* 123 Iowa, 693. See *Mann v. City of Le Mars,* 109 Iowa, 251.

The change effected seems to be in specifying the time more definitely and the substitution of the expression that "the board now take a recess," instead of adjourn. The use of "recess," instead of "adjourn," is unimportant. *Ex parte Mirande,* 73 Cal. 365 (14 Pac. 888). Both mean that the meeting was postponed until the time specified.

Section 422, par. 2, of the Code, expressly authorizes the board "to adjourn from time to time." This means to some time specified. As the statute fixes the dates of regular meetings there is no occasion for publishing notice, but special meetings can be held only on the written request

of a majority of the members and after notice thereof has been published. Section 420, Code. It is apparent that the meeting on the 13th was not a special session and was wholly unauthorized, unless the board may adjourn to a time not specifically designated, but to be determined by a future event. This adjournment appeared in the record of the board, and was a part of the proceedings required to be published. Section 441, Code, Supp. No one was informed as to the time the expert accountant would be engaged in examining the treasurer's books, and the members could not well continue in session in the meantime. Had a particular day been fixed, several meetings might have been necessary at the expense of the county and inconvenience of the board. The postponement was merely till the expert had completed the examination of the treasurer's accounts, and no one will pretend but that these should be promptly settled with that officer. Though the time to which adjournment was taken was not definite, it became so upon the happening of a specified event; i. e., the completion of the examination of the books. This involved no concealment, for the proceedings disclosed what had been done as fully as though the postponement had been until a named day, and there was the same publicity. Moreover, any one interested might have ascertained the date of the meeting which the record disclosed was contemplated when the adjournment was taken. There is nothing in the statute exacting that an adjournment shall be to a designated day. It is to be from "time to time," and such time to which adjournment is had may be a day named or one which will be definitely fixed or made certain by that which subsequently transpires. Had the adjournment been simply at the call of the auditor or chairman, without anything from which to determine the time of the meeting, it must have been regarded as an adjournment without day. To hold otherwise would defeat the purpose of the statute with reference to special

*(margin note: 8. SAME: adjournment of meetings.)*

sessions. But where the record discloses that a specified session in the future is contemplated, and the order or resolution of adjournment clearly indicates that it is for the purpose of transacting business which, for some reason stated, can not be taken care of at the present, and the date of the meeting is so certainly designated that it may be definitely determined by the happening of a future event, then it is an adjournment from time to time within the meaning of the statute quoted.

It follows that the board of supervisors were in regular session on January 13th, and, as the subsequent adjournments are not questioned, it continued in regular session when passing on the statement of consent.

The judgment of the district court so holding is— *Affirmed.*