## Kline v. Fawkes

*Leonard B. Sokolove,* for plaintiffs.

*William J. Carlin,* for defendants.

GARB, J., November 12, 1970.—This is an action in quo warranto which is but a sequel to Fawkes v. Kline, 20 Bucks 87 (1970). Both cases arise out of the allegedly abortive attempts of the Board of Township Commissioners, Bristol Township, Bucks County, Pa., a first class township, to reorganize as man-

dated by the First Class Township Code of May 29, 1968, (Act no. 69) sec. 1, 53 PS §55701, which organization was to occur on the first Monday of January 1970. As indicated in the foregoing opinion of this court, the said reorganization failed to materialize on the said first Monday of January 1970, although attempt was apparently made thereof, as the result of which the incumbent president, Harry W. Fawkes, and the incumbent vice president, Aurelio L. Cerasoli, having continued in office as township commissioners, continued to hold their respective offices. As indicated in the former opinion of this court, five of the 10 members of the said board of commissioners convened the following night and purported to reorganize which, as we held, was not effective. Notwithstanding the failure of the board to reorganize on the first Monday, they did not adjourn their meeting from day to day. Following the purported reorganization by the five members of the board on the day following the first Monday of January 1970, defendants herein instituted an action in equity to restrain the allegedly newly elected officers from acting in their purported capacities. A hearing was held on the action in equity, resulting in an agreement on both sides that the allegedly elected officers at the so-called reorganization meeting refrain from assuming to exercise the prerogatives of such offices, without prejudice, for a period of 60 days while the incumbents continue to act and while the parties attempt to reconcile their differences so that the board could be effectually reorganized. As the result of our foregoing opinion in the first action in quo warranto, the action in equity has been rendered moot.

On March 18, 1970, the regular meeting of the board was convened in the meeting hall of the Bristol

Township Municipal Building, at which time all 10 members of the board were present. This was the first meeting of the said board after the termination of the 60-day period agreed upon by stipulation of the parties at the equity hearing heretofore mentioned. The meeting was convened, as was the usual practice for this board, with a prepared agenda. During the course of the meeting and while still disposing of the business specifically set forth on the prepared agenda, one of the members of the board either moved by motion or requested that the board proceed to reorganize. Defendant Fawkes, who was then the presiding officer, ruled that this motion was out of order and the board proceeded with the rest of the business specifically enumerated on the agenda.[1] Pursuant to the usual procedure of the board, the last item of business at the meeting was that portion generally called "good and welfare" or "good of the township." During this portion of the meeting, each member of the board in the order in which he is seated has the opportunity to bring before the board any matters of interest to the township which were not specifically placed upon the agenda. During this portion of the meeting, at least two or perhaps three of the commissioners moved by motion or requested that the board reorganize. In each instance, defendant Fawkes declared the motion or suggestion out of order and refused to consider same. After each commissioner had stated his business or passed, defendant Fawkes declared the meeting adjourned without any motion to do so or vote taken. Plaintiff Kline objected thereto, but upon

---

[1] Apparently, two other matters not specifically enumerated on the agenda were considered during the regular agenda course of the meeting.

a ruling by the solicitor, acting as parliamentarian, was overruled. Thereupon, Kline declared that the meeting was not adjourned and that the board would then proceed to reorganize. Kline declared nominations open for the office of president and he was nominated and duly seconded. There being no other nominations, each member of the board was polled and five members voted for Kline[2] and the other five did not vote.[3] Kline then declared nominations open for vice president, at which time Kehoe was nominated and seconded. There being no other nominations forthcoming, the same procedure followed, there being five votes for and none against Kehoe. The same procedure followed for the purpose of election of secretary and solicitor with Commissioner Reinholt being thereupon elected secretary and Leonard Sokolove, Esq., thereupon being elected solicitor. During the entire foregoing portion of the proceedings, all 10 members of the board remained in their seats with defendant Fawkes objecting by stating that it was not a meeting because the meeting had been adjourned.

Based upon the foregoing alleged election, plaintiffs herein, being those persons allegedly elected to the offices of president, vice president and secretary, respectively, assert that the board has been reorganized and they have been elected to their offices. Defendants, being incumbent officers from the immediately preceding board, assert that it was not a valid reorganization inasmuch as the meeting had been adjourned. As stated in our preceding opinion and the cases cited therein, this being a dispute concerned with the question of the right to hold office, quo warranto is the correct procedural remedy.

---

[2] All five Democratic members of the board.

[3] The five not voting being the Republican members of the board.

We are, in effect, asked to assume the position of parliamentarian ex post facto for the Bristol Township Board of Commissioners. While we do not relish this task, we recognize that it is our duty to construe the actions taken to determine whether the mandate of the First Class Township Code has been complied with in order to determine whether the duly elected township commissioners have properly discharged their public function. If at the time the foregoing alleged election was held the board was in the process of a judicially recognizable meeting, then we have no difficulty in determining that plaintiffs herein have been duly elected. While admittedly each received only five votes from the 10 members then present, each received all of the votes cast by the members then present and voting. If a quorum of the membership of the board is present[4] then a majority of the votes cast carries the motion on the floor. See Commonwealth ex rel. v. Fleming, 23 Pa. Superior Ct. 404 (1903). Admittedly, Meixell v. Hellertown Borough Council, 370 Pa. 420 (1952), seemingly creates some confusion. There, the court stated the question before it as being that where those present and validly voting are sufficient to constitute a quorum, does the vote of a majority of those ballots which have been validly cast, legally bind the council? All nine of the borough councilmen were present when the election for a burgess was held. Two of the votes were disqualified by the court and, therefore, seven valid votes were cast. Four were cast for Meixell and three for other candidates. The court declared that Meixell was validly elected, although he did not garner a majority of those present. Admittedly, he received a majority of the valid votes cast. However,

---

[4] A majority of the members of the board, or six, shall constitute a quorum: Act of May 27, 1949, P. L. 1955, sec. 21, 53 PS §55702.

the court cited with approval in support of its holding Commonwealth v. Fleming, supra. In the latter case, the Borough Council of Rochester was composed of 12 members, a majority constituting a quorum. At an adjourned meeting at which 10 of the 12 council members were present, a motion was made to elect a member to fill a vacancy. In the election, Moulds received five votes, another candidate two votes and three councilmen abstained. The court held that Moulds was duly elected although he did not receive a majority of those present but did receive a majority of the votes cast. The court held, however, that the person receiving a majority of the votes of the elective body was lawfully elected, notwithstanding the fact that some of the electors neglected to vote. The nonvoting members had not the power by their silence to prevent the action of the body in carrying out the election proposed. The court cited with approval 1 Wilcock's Municipal Corporation, sec. 546, in relevant part as follows:

" '. . . whoever has a majority of those who vote, the assembly being sufficient, is elected, although a majority of the entire assembly altogether abstain from voting because their presence suffices to constitute the elective body, and if they neglect to vote, it is their own fault and shall not invalidate the act of others, but be construed an assent to the determination of the majority of those who do vote.' "

The court further cited with approval from Horr & Bemis on Municipal Ordinances, sec. 43, as follows:

" '. . . Those who are present and help to make up the quorum are expected to vote on every question, and their presence alone is enough to make the vote decisive and binding whether they actually vote or not. The object of legislation cannot be defeated by the refusal of any one to vote when present.' "

See also Melrose Park Improvement Association v.

Cheltenham Township, 88 Montg. 341 (1967), and Commonwealth ex rel. v. Novinger, 7 D. & C. 2d 471 (Dauphin, 1955). Inasmuch as the five Republican members failed to vote, each nominee received a majority of the votes cast and were, therefore, duly elected. Even if it be held that the nominated condidate be disqualified from voting for himself, where the matter on the floor is passed or adopted by a sufficient number of legal votes, it will not be invalidated by improper or illegal votes: Eways v. Reading Parking Authority, 385 Pa. 592 (1956). Therefore, even if the vote of each candidate be stricken, each received four of the five votes of those members present and voting and would be duly elected.

The more difficult question for determination is whether at the time of the election the board was then in session in a duly constituted and judicially recognizable meeting. The term "adjournment" as applied to such meetings is one not clear of ambiguity. It has two well defined and recognized meanings. The first is to suspend or recess during a meeting which continued in session (Division of Lansford Borough, 141 Pa. 134 (1891)), and the second is to conclude or terminate a term or meeting. In the latter sense, the adjournment is usually sine die. While, as noted, ambiguity is often present, it should always be readily dispelled by a reference to the minutes of the body itself: Byrd v. Byrd, 193 Miss. 249, 8 So. 2d 510 (1942). An adjournment may mean a recess or a sine die end to a meeting: Joint School District No. 7 of the Town of East Troy v. Walworth County School Committee, 6 Wis. 2d 366, 94 N.W. 2d 695 (1959). An adjourned meeting has been held to be merely a continuation of a previous meeting: Division of Lansford Borough, supra; Vogel v. Fair Lawn, 118 N.J. 521, 193 Atl. 817 (1937). It has been said, however, that even if a motion to adjourn had passed, if the

members of the body had not separated or dispersed, the adjournment was not completed and the body could still act. An adjournment is an act, not a declaration. It is an act of separation and departure, and until this takes place, the adjournment is not complete: Person & Drissel v. Neigh, 52 Pa. 199 (1866); Gallagher v. School Township of Willow, Woodbury County, 173 Iowa 610, 154 N.W. 437 (1915); Beatle v. Roberts, 156 Iowa 575, 137 N.W. 1006 (1912). We do not decide herein whether an adjournment can be effectuated only upon motion and vote or can be declared unilaterally by the chair. We find rather, recognizing that the proceedings at meetings of township boards are subject to the ordinary rules of parliamentary procedure (37 P. L. Encyc. 25, Townships, and 87 C.J.S. 57) that the meeting had not been adjourned because all members of the board were present and they still had statutorily mandated business, a reorganization, to complete.[5]

We make no comment upon the conduct of the chairman of the meeting on those occasions when motion or request was made to proceed to reorganize. We place little weight upon the question of whether they were merely requests or motions made in formal order. It was clear that several of the members of this board desired to proceed to reorganize and articulated those desires as best they could. We will not decide whether under a strict construction of correct parliamentary procedure they must use the technical words of submission of a motion. This was not a meeting of the Congress of the United States or the Parliament of

---

[5] Although there was testimony that it was traditional for the proceedings to be determined by Roberts' Rules of Order which were relied upon by the solicitor and parliamentarian, a copy of said rules was not made a part of the record nor incorporated by reference, and we do not perceive that we may take judicial notice of this compendium.

Great Britain nor indeed of the Supreme Soviet of the Union of Soviet Socialist Republics. This was a meeting of the Board of Township Commissioners of Bristol Township, Bucks County, Pa., and we must consider the actions of its members within the context of a local municipal governing body made up of lay people who are not necessarily learned in the intricacies of parliamentary procedure. It is sufficient if they made known in clear, concise, every-day English language that they desired to proceed to reorganize. This, we find, they did.

The legislature has mandated in clear and unmistakable terms that the board shall be reorganized on the first Monday of each even numbered year. The legislature has indicated unequivocally the importance of this mandate. Prior to the 1957 amendment to the First Class Township Code, it was provided in language identical to that now in effect that the reorganization shall occur on that date and that no other business may be transacted at the reorganization meeting. See the Act of May 27, 1949, P. L. 1955, sec. 21. The amendment of March 26, 1957, P. L. 15, sec. 1, as again amended by the Act of May 29, 1968, was added only to provide that the reorganization meeting may be considered as a regular monthly meeting for the transaction of other township business but that reorganization shall take precedence and be the first order of business. To further indicate the importance the legislature placed upon reorganization, it is likewise provided in that section, as it had been previously, that upon failure to reorganize as directed, delinquent commissioners may be removed from office upon petition of 10 taxpayers of the township. Nothing could speak more eloquently of the importance placed by the legislature upon the necessity of reorganizing.

We cannot condone the actions of the chairman in thwarting the desire of other members of this board

to reorganize. Reorganization could not be undertaken for 60 days prior to this meeting because of the agreement of counsel entered pursuant to the equity action heretofore alluded to. That fact did not obviate the necessity of reorganization, nor did it have the effect of extending the term of office of the incumbent officers for another period of two years. The president and vice president, two of the defendants herein, of the previously existing board of commissioners held no inherent right to their offices but were merely appointed officeholders and could be removed at the pleasure of the board of commissioners: Quashnock v. Sigmund, 85 D. & C. 584 (Allegheny, 1953).[6] To adopt the reasoning and argument of defendants herein would be tantamount to a license to them unilaterally, without motion or vote, to adjourn any regular or special meeting of the board whenever anyone moved or suggested that reorganization be undertaken. In this way, they would retain the power to circumvent what we consider to be the clear intention of the legislature and thereby to hold their offices beyond the term for which they were duly elected. We consider this to be an untenable, unreasonable and unlawful result and cannot sanction same. Accordingly, we hold that the Board of Township Commissioners of Bristol Township succeeded in reorganizing at its meeting on March 18, 1970, and that plaintiffs herein were duly elected to the offices they seek. Accordingly, we enter the following

### ORDER

And now, to wit, November 12, 1970, it is hereby ordered, directed and decreed that James N. Kline is

---

[6] Although this case was decided under article VI, sec. 4, of the Constitution of 1874, an almost identical provision is contained in the Constitution of 1968 in article VI, sec. 7.

president, Eugene C. Kehoe is vice president and Arthur Reinholt is secretary, respectively, of the Board of Commissioners of the Township of Bristol, Bucks County, Pa. Costs on defendants.

For the dissenting opinion by Bodley, J., in the above matter, see 52 D. & C. 2d, page 50.